**In the Matter of the WELFARE OF R.I., M.I. Jr., and K.H., minor children.**

No. C6–86–1179.

Court of Appeals of Minnesota.

March 10, 1987.

Margaret Seelye Treuer, Bemidji, for appellant Mother.

Earl Maus, Co. Atty., Jodie A. Metcalf, Asst. Co. Atty., Walker, for respondent State of Minn.

Michael R. Ruffenach, Bemidji, for respondent Warm Springs Tribe.

Harlan E. Smith, Walker, for respondent Children and Guardian ad Litem.

Stephen M. Baker, Walker, Karen J. Sullivan, Anishinabe Legal Services, Cass Lake, for respondent H.H.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

FORSBERG, Judge.

Appellant is the mother of three Indian children. She appeals an order of the juvenile court issued in a dependency action pursuant to Minn.Stat. § 260.291 (1984), placing one child with her father, dismissing the proceeding as to the other two children, and transferring jurisdiction as to these children to the Tribal Court for the Confederated Tribes of the Warm Springs Reservation of Oregon under the Federal Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963 (1982) (ICWA).

## FACTS

Appellant seeks custody of her children, R.I., M.I. Jr., and K.H. R.I. and M.I. Jr. were born during appellant's marriage to M.I. Sr. The father and the children are all enrolled members of the Warm Springs Tribe in Oregon. Appellant is an enrolled member of the Red Lake Indian Reservation in Minnesota. On February 24, 1982, M.I. Sr. and appellant were divorced by order of the Warm Springs Tribe. Appellant was awarded custody of the children. Appellant lived with her children on the Warm Springs Reservation for a short time, but then returned to Minnesota, leaving her children behind with her ex-husband.

On July 23 and 24, 1983, M.I. Sr. left R.I. and M.I. Jr. unattended while he went out drinking. As a result, the Warm Springs Tribal prosecutor filed a neglect petition in the Tribal Court. On July 27, 1983, the Tribal Court issued emergency custody orders making the children wards of the court.

In Minnesota, appellant and H.H. had a daughter, K.H., born out of wedlock on January 19, 1984. H.H. and K.H. are both enrolled members of the Leech Lake Reservation in Minnesota. During the pendency of this action, H.H. was adjudicated to be the father of K.H.

In September of 1984, appellant returned to the Warm Springs Reservation, retrieved R.I. and M.I. Jr., and brought them to live with her and K.H. in Minnesota. On October 2, 1984, a social worker with Leech Lake Family Services visited appellant's household and found appellant and three friends intoxicated. Appellant's mother was present and sober and stated that she would care for the children. However, upon returning to the home, the social worker found the children unattended. The adults were all passed out, indeed, appellant was passed out on top of K.H. A Minnesota Deputy Sheriff then took custody of the children under a 72 hour emergency hold. The children were placed in the temporary custody of the Leech Lake Family Services and Cass County Social Services. On October 5, 1984, Cass County commenced a dependency action concerning all three children pursuant to Minn.Stat. § 260.131, alleging that the children were without proper parental care.

On October 9, 1984, the children were temporarily placed with appellant on the condition that appellant abide by a "services plan" entered into with Leech Lake Family Services and Cass County Social Services. The services plan is a rehabilitative program designed to reunite the family. *See generally* Minn.Stat. § 260.155, subd. 7 (listing as factor in trial court's determination of neglect, whether parent has participated in rehabilitative efforts). Pursuant to the plan, appellant agreed to attend weekly AA meetings, parenting classes, and to abstain from alcohol and drugs. Appellant failed to abide by the plan, however, and after a hearing on February 8, 1985, the children were temporarily placed in foster care.

Initially, the trial court was not apprised that R.I. and M.I. Jr. were enrolled or eligible for enrollment with the Confederated Tribes of Warm Springs Reservation and, thus, did not give notice to the Warm Springs Tribe until after the February hearing. On March 15, 1985, the Warm Springs Tribe moved the court to intervene pursuant to § 101(c) of the ICWA. The Tribe served notice on all the parties of their request to dismiss the state action and have R.I. and M.I. Jr. transferred to the Warm Springs Reservation pursuant to 25 U.S.C. § 1911(b).

At a review hearing on April 3, 1985, the parties stipulated that the Warm Springs Tribal Court could intervene as a party and preserve its objection to Minnesota's assertion of jurisdiction over R.I. and M.I. Jr. The Tribal Court and the trial court agreed that the trial court would continue to exercise "courtesy supervision" over the case. Appellant admitted the county dependency petition and agreed to participate in another services plan which, if successful, would lead to a quick replacement of the children with appellant. At a second review hearing on October 10, 1985, appellant did not receive a favorable report and agreed to participate in yet another services plan.

In February of 1986, without permission from the trial court, the legal custodians, or her social workers, appellant took R.I. and M.I. Jr. to the Warm Springs Reservation. While on the reservation, appellant was charged with, and pleaded guilty to, possession of amphetamines. The Tribal Court then gave her $300.00 to take the children back to Minnesota. The Tribal Court informed appellant that if she allowed the children to remain on the reservation, custody proceedings would again be instigated. Appellant took the money, but left the children with their paternal aunts. The Tribal Court then issued another emergency custody order. At a subsequent hearing the Tribal Court temporarily placed the children in the custody of their aunts.

On April 30, 1986, the Cass County Attorney moved to dismiss the Minnesota custody proceedings with respect to R.I. and M.I. Jr., and to continue the action as to K.H. The Tribal Court claimed that it had

exclusive jurisdiction. over R.I. and M.I. Jr. and sought to have the action transferred to Warm Springs. The trial court, finding that appellant had consented to the transfer of jurisdiction to the Tribal Court by bringing the children to the reservation and leaving them there voluntarily, granted the motion to dismiss the action as to R.I. and M.I. Jr., and transferred jurisdiction to the Tribal Court.

Based on the testimony of three expert witnesses, the court also found that returning any of the children to appellant was likely to result in serious emotional or physical harm to the children. The court then placed K.H. with her father and continued legal custody temporarily with Leech Lake Family Services and Cass County Social Services.

## ISSUES

1. Did the Tribal Court have exclusive jurisdiction over R.I. and M.I. Jr?

2. Did the trial court err in transferring the case to the Tribal Court over the objection of the natural mother and in dismissing the proceedings as to R.I. and M.I. Jr.?

3. Does the record contain clear and convincing evidence, supported by a qualified expert, that awarding custody to appellant is likely to result in serious emotional or physical damage to the children?

4. Did the trial court err in refusing to direct the social services agency to take all necessary steps to obtain the return of the children from the Warm Springs Tribe?

5. Did the trial court deny appellant due process or equal protection of the law by placing physical custody of K.H. with her father?

## ANALYSIS

### I.

The Warm Springs Tribe argues that it has exclusive jurisdiction over R.I. and M.I. Jr. under § 101(a) of the ICWA. This section provides:

An Indian tribe shall have jurisdiction exclusive as to any state over any child

custody proceeding involving an Indian child * * * [w]here an Indian child is a ward of a tribal court * * * notwithstanding the residence or domicile of the child.

25 U.S.C. § 1911(a). The Tribe contends that R.I. and M.I. Jr. were wards of the Tribal Court pursuant to the July 27, 1983 emergency custody orders.

█ The trial court must give full faith and credit to the wardship orders issued by the Warm Springs Tribe. 25 U.S.C. § 1911(d). Nonetheless, the State has concurrent jurisdiction under § 112 of the Act. Section 1922 provides:

Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. The State authority * * * shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

25 U.S.C. § 1922. When the Minnesota dependency proceeding was commenced, R.I. and M.I. Jr. were residents of, and domiciled in, Cass County, Minnesota. Minnesota Statute § 260.111(1) provides in pertinent part:

the juvenile court has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be * * * neglected, neglected and in foster care, or dependent * * *.

Minn.Stat. § 260.111(1) (1984). Jurisdiction over dependent or neglected children rests in the court where they are found or have their residence. Since the custody proceeding was a direct result of the 72–hour emergency hold on the children, the trial court properly had jurisdiction over R.I. and M.I. Jr.

## II.

Appellant argues that the trial court erred in transferring the proceedings to the Tribal Court, claiming that she objected to the transfer. Section 101(b) of the ICWA provides:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, *absent objection by either parent,* upon the petition of either parent or the Indian custodian of the Indian child's tribe * * *.

25 U.S.C. § 1911(b) (emphasis supplied).

The Tribe contends that the parties stipulated to recognize the jurisdiction of the Tribal Court and did not object to the transfer. However, upon review of the record it is clear that appellant did not stipulate to the jurisdiction of the Tribal Court.

The State argues that under the ICWA, the court *must* transfer the action absent good cause to the contrary or parental objection, but upon parental objection, the trial court may exercise its discretion in determining whether to transfer the proceedings. We have found no authority for the State's assertion that upon receiving a parental objection, the decision to transfer is discretionary. Other jurisdictions have held that parental objection *mandates* retention of the action in state court. *See, e.g., In the Matter of Adoption of Baby Boy L.,* 231 Kan. 199, 643 P.2d 168, 178 (1982); *Matter of S.Z.,* 325 N.W.2d 53, 65 (S.D.1982).

■ The Tribal Court and the State argue and the trial court found that although appellant verbally objected to the transfer of the proceedings, she impliedly consented to the transfer by voluntarily bringing the children to the Warm Springs Reservation. Appellant argues that the Tribal Court had no right to issue an emergency custody order, claiming that she placed the children with her extended family in accordance with accepted Indian custom. The Tribal Court, however, found that she had abandoned the children. We will not disturb that finding. We hold that the trial court properly concluded that appellant consented to the transfer of jurisdiction by leaving her children on the reservation.

## III.

Appellant argues that the State failed to prove by clear and convincing evidence that returning the children to her custody would likely result in placing them in danger of serious physical or emotional harm, under section 102(e) of the ICWA. The trial court heard testimony from three qualified expert witnesses on this issue, each of whom had been actively involved in the proceedings, and had considerable experience in child care, custody proceedings, and Indian culture: Verna Stave, a social worker who has worked with Indian families for 20 years; Marlene Hardy, an enrolled member of the Minnesota Chippewa Tribe who is a social worker with a B.S. in social work and a minor in early childhood development; and John Cegla, an enrolled member of the Minnesota Chippewa Tribe, who is a Ramsey County Social Services employee with a B.A. in Sociology.

■ The experts testified that the children would be in danger of imminent serious physical or emotional harm if placed in the custody of appellant, due in part, to her inability to maintain her sobriety for any length of time. These opinions were based on testimony establishing appellant's inadequate participation in treatment and aftercare; her continued pattern of alcohol abuse; her conviction for possession of amphetamines; her repeated abandonment of her children; and her withdrawal of confidential information from the treatment program so as to make it unavailable to county officials. The experts were especially concerned with appellant's behavior while the children were in her custody. Witnesses testified that appellant was often intoxicated while she had custody of the children and did not leave them in the care of responsible, sober adults, but left them unsu-

pervised. We hold that the State met its burden of proving, by clear and convincing evidence, that returning the children to appellant would result in placing them in danger of imminent serious physical or emotional harm.

### IV.

Appellant contends that the trial court erred in declining to compel social services of Leech Lake to obtain the return of her children. Appellant does not cite any case or statutory law supporting her argument. We fail to see how the trial court could have compelled Leech Lake Social Services to invade the Warm Springs Reservation, disrupt the self-government of the Tribe and take the children back to Minnesota. We note further that the Tribe had previously given appellant the funds to take her children back to Minnesota, but she voluntarily refused this offer. The trial court did not err in denying the motion.

### V.

Appellant asserts that the trial court erred in placing K.H. in the custody of her father. Essentially, appellant claims that H.H. also has an alcohol problem, but that the trial court failed to require him to go through a services program. She claims that such unequal treatment violates her right to due process and equal protection. This contention is without merit. No testimony was presented to the trial court to show that any alleged alcohol problems interfered with H.H.'s ability to care for K.H. Indeed, there was testimony that H.H. was refraining from alcohol use.

### DECISION

The trial court had jurisdiction over R.I. and M.I. Jr. The court properly dismissed the custody proceedings as to R.I. and M.I. Jr., and transferred the action to the Tribal Court. The State proved by clear and convincing evidence that returning the children to appellant would result in imminent serious physical or emotional harm. Appel-

lant was not denied due process or equal protection of the laws.

Affirmed.