766 P.2d 105

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JS–7359.**

**No. 1 CA–JV 88–009.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 29, 1988.

Review Denied Jan. 24, 1989.

Beer & Toone, P.C. by John D. Harris and Atmore Baggot, Phoenix, for natural mother.

Linda Gray Fee, Phoenix, for appellee children.

Robert K. Corbin, Atty. Gen., by C. Eileen Bond, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Economic Sec.

## OPINION

KLEINSCHMIDT, Judge.

This is an appeal from an order of the juvenile court terminating the parent-child

relationship between a mother and two of her children. The case involves the application of the Indian Child Welfare Act, 25 U.S.C. §§ 1911–63 (1978), and the constitutionality of the Arizona statutes relating to termination.

The appellant, Donna Hutchinson, was formerly married to Dennis Lee Somerville. The couple had three children, the younger two are a daughter and a son.

In 1975, the Somervilles were divorced and Donna received custody of the children. That same year, Donna married Howard Fancher. Because Fancher abused the children, all three were removed from the home by State of Rhode Island authorities on two occasions in 1980 and 1981. The Rhode Island court transferred custody of the children to their natural father, an arrangement that continued after Donna divorced Fancher. In 1984, Donna married Robert Hutchinson.

In 1984, Dennis Somerville and his children were living in Arizona. It was reported to the Arizona Department of Economic Security (DES) that Dennis had abused his daughter. The father admitted the allegation and all of the children were taken into custody by DES. The appellant was contacted at her home in Massachusetts, and she requested that the children be placed with her. DES declined to do that upon learning that the children had previously been removed from her custody.

It was believed that the appellant was a Narraganset Indian. The DES, upon declining to place the children with their mother, contacted the Narraganset Tribe, and the tribe indicated that it wished to intervene in the Arizona proceedings. In July of 1984, the tribe filed a motion to intervene and requested that the case be transferred to tribal authorities. In November 1984, after the natural father filed a formal notice of objection to the transfer, the trial court denied the request to transfer.

Almost a year later, in October 1985, the juvenile judge approved a case plan calling for the return of the oldest of the three children to the appellant. The remaining two children were to be released to their mother and stepfather "either between the present and upcoming school semesters or at the end of the Spring school semester depending on progress shown by the mother and the stepfather in appropriate counseling and assuming reasonable stable parenting by the mother and stepfather of [the oldest child] is shown." The judge provided a detailed plan of counseling for the mother and her husband.

In April of 1986, the judge denied the appellant's request for the return of the children until he could obtain the results of a neurological examination of the mother and an explanation of why she had not participated in therapy. Two months later, the court entered an order reciting that the appellant was seriously uncooperative and advising her that the court was contemplating initiating termination proceedings, a step which he finally directed DES to take in October 1986.

In January 1987, DES filed a petition to terminate the parent-child relationship between the appellant and the two youngest children. The Narraganset Tribe was notified and initially indicated a desire to intervene and assert jurisdiction over the case. Thereafter, in July 1987, the tribe's director of social services sent the juvenile judge a letter, the text of which was:

> The Narraganset Tribe of Indians, after due conversation with the children's attorney, are going to remit jurisdiction in this matter, and allow the State to determine the best placement resources.

While there is a reference to this letter in the appellant's memorandum, neither the appellant nor the DES appears to attach any significance to it for the issues presented in this case.

After a severance hearing, the juvenile judge concluded beyond a reasonable doubt that the two youngest children had been cared for in an out-of-home placement under the supervision of DES for a cumulative total of one year or longer and that the mother had neglected or refused to remedy the situation giving rise to the out-of-home placement. On this basis the judge granted termination.

The appellant asserts the following five grounds of error:

1. When the motion to transfer jurisdiction to the Tribe was made, the juvenile court lost jurisdiction, and all of its subsequent orders are void.

2. The placement preferences spelled out in the Indian Child Welfare Act were never taken into account. Since the out-of-home placement was improper, the Arizona statute which makes such placement for an extended period grounds for termination cannot apply.

3. Termination cannot be based on an extended out-of-home placement because the order for placement did not meet the standards of the Indian Child Welfare Act, which authorize out-of-home placement only when there is clear and convincing evidence from qualified experts that parental custody will result in serious physical or emotional damage to the child. When the children were removed from the custody of their natural father, the court declined to return them to their mother without making such a finding.

4. The Indian Child Welfare Act precludes termination in the absence of a finding beyond a reasonable doubt that custody by the parent is likely to result in serious emotional or physical damage to the child. The juvenile court did not address this requirement.

5. The Arizona statute which allows for termination based on extended out-of-home placement is unconstitutional because neither administrative convenience in terminating a dependency nor the best interests of the children are justifiable reasons for depriving parents and children of a fundamental right.

## THE ARIZONA COURT HAD JURISDICTION

■ The Indian Child Welfare Act gives tribal courts concurrent jurisdiction with state courts over any Indian child who is not domiciled or residing on the reservation. Under 25 U.S.C.A. § 1911(b) the state court, in the absence of good cause to the contrary and absent objection by either parent, must transfer jurisdiction of an In-dian child to the tribal court. The father's objection mandated the retention of jurisdiction by the Arizona court.

## THE INDIAN CHILD WELFARE ACT DOES NOT APPLY

■ The appellant premises her arguments regarding the invalidity of the juvenile court's order on the assumption that the children are "Indian children" within the meaning of the Act. The premise is faulty.

The Act defines an "Indian child" as [a]ny unmarried person who is under age eighteen and is either (a) a member of an Indian tribe, or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.

A party who asserts the affirmative of an issue generally has the burden of proving it. *Black, Robertshaw, Frederick, Copple & Wright v. United States*, 130 Ariz. 110, 634 P.2d 398 (App.1981). In 1984, when the tribe sought the transfer of jurisdiction, it was assumed that the children were Indians as defined by the statute. This assumption was apparently incorrect. The appellant's enrollment, and that of her children, depended upon the enrollment of her father, Donald Lincoln. Evidence secured from tribal authorities in late September 1987 showed that Lincoln was not an enrolled member of the tribe and was in the process of trying to perfect his enrollment. There was evidence that a birth certificate submitted by Lincoln in support of his application had been altered. There is nothing in the record to show that he has ever achieved enrollment.

■ If the children are not Indian children, the Indian Child Welfare Act has no implication for either the dependency proceedings or the termination proceedings. *See State ex rel. Juvenile Department of Lane County*, 76 Or.App. 673, 710 P.2d 793 (1985). Even if the Indian Child Welfare Act applied and the preferred placements were ignored, this is immaterial to the question whether termination based on a failure to remedy the condition which made the out-of-home placement necessary is ap-

propriate. *See B.R.T. v. Executive Director*, 391 N.W.2d 594 (N.D.1986). In a termination proceeding the focus is not on where the children have been living but on why they are dependent, whether the situation can be remedied, and if not, why not.

The appellant argues that the initial dependency proceeding which resulted in an out-of-home placement violated the terms of the Indian Child Welfare Act because there was no finding, by clear and convincing evidence based on the testimony of qualified experts, that parental custody would result in serious physical or emotional damage to the children. The original order finding the children dependent was not appealed. The appellant's argument amounts to an impermissible collateral attack on the order. *See Bill v. Gossett*, 132 Ariz. 518, 647 P.2d 649 (App.1982). We therefore do not consider the argument.

## CONSTITUTIONALITY OF THE ARIZONA TERMINATION STATUTE

The maintenance of the parent-child relationship is a fundamental right, and the rationality of statutes which abridge it is subject to strict scrutiny. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The appellant argues that under *Santosky* termination is improper unless the state proves that the person whose rights are to be terminated is an unfit parent. She says that here, there was no finding that she was an unfit parent or that continuation of the parent-child relationship would seriously jeopardize the welfare of the children. *See Juvenile Appeal No. JS–4283*, 133 Ariz. 598, 653 P.2d 55 (App.1982). She further says that the only justification for termination based on out-of-home placement is the administrative convenience of the state and the best interests of the child in obtaining a secure home, and that these are insufficient reasons for termination.

It is true that the purpose of A.R.S. § 8–533(B)(6) is to expedite the adoption of children in foster care who have no hope of being returned to their natural parents. *Juvenile Appeal No. JS–6520*, 157 Ariz.

238, 756 P.2d 335 (App.1988). What the appellant overlooks is that our statutes incorporate a concept of parental unfitness. Termination can occur after one year of out-of-home placement if the DES has made diligent efforts to reunify the family and the parent *has substantially neglected or refused to remedy* the circumstances which caused the child to be in out-of-home placement. A.R.S. § 8–533(B)(6)(a). Termination can occur after two years of out-of-home placement if the agency has made diligent efforts at reunification and the parent *has not been able to remedy* the circumstances which caused the placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future. A.R.S. § 8–533(B)(6)(b). The appellant's refusal to remedy the situation that made out-of-home placement necessary is a reflection on her fitness as a parent.

The United States Supreme Court recognized that these grounds are sufficient for a termination when it said:

> The State's interest in finding the child an alternative permanent home arises only 'when it is *clear* that the natural parent cannot or will not provide a normal family home for the child.'

*Santosky*, 455 U.S. at 767, 102 S.Ct. at 1402, 71 L.Ed.2d at 615 (emphasis in original).

The orders of the trial court are affirmed.

GRANT, C.J., and SHELLEY, P.J., concur.