781 P.2d 634

**In the Matter of the Appeal in PIMA COUNTY JUVENILE ACTION NO. S-2460.**

No. 2 CA-JV 89-0022.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 19, 1989.

Sarah Michelle Martin, Tucson, for Natural Mother.

Robert K. Corbin, Atty. Gen. by Sara S. Wisdom, Tucson, for Dept. of Economic Sec.

Paul F. Tosca, Jr., Tucson, for Minors.

OPINION

HATHAWAY, Judge.

The mother appeals from the order of the juvenile court terminating her parental rights to two of her children pursuant to A.R.S. § 8-533(B)(2) and (B)(6)(b). She argues that the juvenile court erred in ordering severance in the absence of a plan for adoption of these children and, further, that the court's findings were contrary to the evidence. We disagree and affirm.

The evidence presented to the juvenile court reveals the following facts. The mother has a total of nine children, the two oldest of whom have resided with their maternal grandmother in another state. In December of 1982, the minor girls who are the subject of these proceedings ("G." and "V.") and four of their siblings were removed from the mother's home and subsequently adjudicated dependent. Following the provision of extensive services to the mother and completion of her "contract" with the Department of Economic Security (DES), the two oldest siblings were returned to her care in June of 1984. In November of 1984, she was given the care of a third child, and in April of 1985, a fourth child was returned to her. In the meantime, a ninth child was born to the

mother and her husband. From 1982 to the present, the dependency proceedings have continued and the mother and children have received a broad range of services from DES.

G. was two and one-half years old and V. nine months old when the dependency proceedings were initiated. Both are developmentally delayed and emotionally handicapped. Several of the experts appearing at the severance hearing testified that their problems were attributable in whole or in part to poor parenting and the absence of emotional stimulation during their infancy. Both require special education classes and therapy, as well as attentive, patient, individualized care from their parents. They have remained in the same foster placement since January of 1983, where they have made considerable progress in their development, in large measure due to the devoted care they have received from their foster parents.

For several years, G. and V. had regular lunchtime visits with their natural mother. During the first months of 1986, the mother was allowed to have them for weekend visits. After such visits, however, the children's behavior deteriorated, as did their developmental progress. Moreover, after two of the weekend visits the girls returned with evidence of injuries and illness which the natural mother either failed to notice, failed to prevent or failed to treat. The visits were discontinued, and DES changed its plan for the children from eventual return to the family to severance. The common thread of the witnesses' testimony was that the natural mother could barely cope with the five children presently living with her, and that she was unable to meet the special needs of G. and V. The foster parents wish to continue to care for G. and V., however, at present there is no plan for adoption.

The juvenile court found grounds for severance under A.R.S. § 8–533(B)(2) and (B)(6)(b), which provides:

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:

\* \* \* \* \* \*

2. That the parent has neglected or wilfully abused the child.

\* \* \* \* \* \*

6. That the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate remedial services and that either of the following circumstances exists:

\* \* \* \* \* \*

(b) The child has been in an out-of-home placement for a cumulative total period of two years or longer pursuant to court order, the parent has been unable to remedy the circumstances which cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

■ The natural mother first argues that the juvenile court erred in ordering severance under subsection (B)(6)(b) because the present plan for the minors is not adoption, but rather long-term foster care, citing two recent decisions of Division One of this court. *Appeal in Maricopa County Juvenile Action No. JS–7359,* 159 Ariz. 232, 766 P.2d 105 (App.1988); *Appeal in Maricopa County Juvenile Action No. JS–6520,* 157 Ariz. 238, 756 P.2d 335 (App. 1988). In the latter case, Division One noted that "[t]he express purpose of [subsection (B)(6)] is to 'expedite the adoption of numerous children who remain in temporary foster care with no hope of being returned to their natural parents and in so doing promote a stable and long term family environment for these children.'" 157 Ariz. at 243, 756 P.2d at 340 (citation omitted). The children in that case were teenagers, and the uncontroverted testimony was that they were not likely to be adopted. The court concluded:

Moreover, while the legislative history of A.R.S. § 8–533(B)(6) contemplated the possibility that a child might be adopted after the court ordered severance, nothing in that history suggests that the provision should be used to allow a court, knowing full well that the child was unadoptable, to sever the parent-child relationship. The stated purpose of the amendment is to "free children for adoption" not to free DES from the responsibility of working with recalcitrant or uncooperative parents.

157 Ariz. at 244, 756 P.2d at 341. The court further indicated that the juvenile court must consider and weigh the benefit of severance to the child as against the detriment should severance be denied. *Id.* at 246, 756 P.2d at 343. In *JS–7359, supra,* the court reiterated that "the purpose of A.R.S. § 8–533(B)(6) is to expedite the adoption of children in foster care who have no hope of being returned to their natural parents." 159 Ariz. at 236, 766 P.2d at 109.

While we accept the conclusion that the primary purpose of subsection (B)(6) is to facilitate adoption of children in foster care in appropriate circumstances, we reject the argument that the subsection precludes severance where there is no immediate plan for adoption. Had the legislature intended this to be a prerequisite to severance, it would have said so directly. Moreover, as this case demonstrates, where there is clear and convincing evidence of parental unfitness which has not been remedied notwithstanding the provision of services by DES and which detrimentally affects the child's well-being, severance may be warranted and appropriate even in the absence of a plan for adoption.

Subsection (B) does not mandate severance upon a finding of one of the enumerated grounds; rather, it sets forth permissible bases in support of severance and, in considering these, permits the juvenile court to consider the child's needs as well. As we read the statute, if the juvenile court finds that there is clear and convincing evidence that the requirements of subsection (B)(6)(b) have been met, it has the discretion to order severance. In exercising that discretion, as Division One suggests, it must consider the benefit of severance to the child as against the detriment should severance be denied. The immediate availability of an adoptive placement obviously weighs in favor of severance, while the improbability of adoption, absent other factors, weighs against it. But the availability of adoption is not the sole criterion. As this case clearly shows, continuation of the parent-child relationship may have such negative consequences for the child that severance is warranted even though an adoptive placement is unavailable. In such circumstances, we believe the juvenile court does not abuse its discretion in ordering severance.

■ In the present case, although there was no immediate plan for adoption, that possibility had not been foreclosed. The caseworker testified that adoption was still under consideration, as well as the possibility of a guardianship. Further, the children had remained in one placement for over six years, they had established a stable and happy relationship with their foster parents, and the foster mother testified that she and her husband wished to continue that relationship at least until the children reached majority. There was also substantial testimony that the children did not benefit from continuing contact with the natural mother—indeed, such contact was shown to be detrimental to their physical, mental and emotional well-being. Considering the circumstances as a whole, we cannot find that the juvenile court abused its discretion in ordering severance, even in the absence of an immediate plan for adoption.

■ The natural mother also contends that the juvenile court abused its discretion in ordering severance based on the mother's past behavior, in light of her consistent progress which enabled her to be reunited with her other children and the testimony of the court-appointed special advocate that she had done very well with her new baby. While the natural mother's characterization of the evidence is accurate as far as it goes, she ignores other substantial evi-

dence that she is barely capable of parenting the five children presently in her care and is incapable of dealing with the special needs of G. and V. Indeed, the testimony concerning weekend visits in 1986 clearly demonstrated the mother's inability to provide the care, supervision and protection these children require because of their developmental disabilities and emotional handicaps. We find no abuse of discretion.

The order of the juvenile court terminating the natural mother's parental rights to G. and V. is affirmed.

ROLL, P.J., and HOWARD, J., concur.