922 P.2d 319

**In the Matter of the APPEAL IN MAR-
ICOPA COUNTY, JUVENILE AC-
TION NO. JD–6982.**

**No. 1 CA–JV 96–0022.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 20, 1996.

David P. Frank, Attorney General of the Tohono O'odham Nation by Mark E. Curry, Assistant Attorney General, Sells, for Tohono O'odham Nation.

Grant Woods, Attorney General of State of Arizona by Susan Frank, Assistant Attorney General, Phoenix, for Arizona Department of Economic Security.

Friedl, Richter & Buri by Charles E. Buri, Phoenix, for Mother.

Richard Scherb, Phoenix, Guardian Ad Litem for Mother.

Davis & Lowe, P.C. by Virginia S. Matte, Phoenix, for Child.

## OPINION

WEISBERG, Judge.

The Tohono O'odham Nation (the "Nation"), a federally recognized Native American population living within the state, appeals from the trial court's denial of its motion to transfer the underlying dependency proceeding from the superior court to the Nation's Children's Court pursuant to the Indian Child Welfare Act (the "Act").[1] For the following reasons, we affirm.

---

1. *See* 25 U.S.C. §§ 1901 *et seq.*

2. To protect the anonymity of the parties, we refer to the child and his parents by their initials

## FACTUAL AND PROCEDURAL BACKGROUND

T.L.M.[2] ("Mother") and A.J.B. ("Father") are the unmarried parents of a child born on July 3, 1993. Mother is not a Native American and Father is an enrolled member of the Nation.

Child Protective Services took the child into temporary custody on October 21, 1993. On October 26, 1993, the Arizona Department of Economic Security ("DES") filed a dependency petition in the superior court alleging that Mother was a drug abuser and mentally unstable, and that the child was in danger while in her custody. Father's identity was then unknown to DES. When the petition was filed, Mother and the child were living in Avondale with Mother's relatives, the Clarks. On October 27, 1993, the juvenile court issued temporary orders making the child a ward of the court. Mother then moved out of the Clark home, leaving the child with the Clarks, to whom the court awarded physical custody.

At the initial hearing on November 16, 1993, Mother contested the petition's allegations and requested that counsel be appointed for her. On November 19, 1993, the court appointed both an attorney and a guardian ad litem ("GAL") for Mother. Counsel was appointed for the child on December 20, 1993.

On January 7, 1994, DES filed an amended dependency petition identifying Father and noting that the child is an Indian child as defined by the Act. The Nation then filed a motion to intervene in the dependency proceeding, which was granted. *See* 25 U.S.C. § 1911(c).

On March 3, 1994, following a contested dependency hearing, the court adjudicated the child dependent as to Mother. Subsequently, the court also found the child dependent as to Father.

Sometime between November 1994 and February 1995, Mother left Arizona and

only. *See J.D.S. v. Franks,* 182 Ariz. 81, 84 n. 1, 893 P.2d 732, 735 n. 1 (1995).

moved to Arkansas. Physical custody of the child remained with the Clarks until August 14, 1995, when the court transferred custody to the child's paternal grandmother who resides within the Nation. Mother neither consented nor objected to this change of custody, and the child remains with his paternal grandmother to date.

On August 22, 1995, pursuant to the Act, the Nation filed a motion to transfer jurisdiction to the Nation's Children's Court. A hearing was held on August 28, 1995, after which the court found the absence of good cause, the presence of which would have prevented the transfer of jurisdiction. Noting that no parental objection (which could also prevent the transfer of jurisdiction) had been filed, the court granted Mother until September 5, 1995, to file an objection through her counsel or GAL. Mother filed a timely objection through counsel.

The court held another hearing on September 28, 1995, at which Mother's counsel stated that he had talked by telephone with Mother, who was still in Arkansas, and that she had objected to the transfer. Mother's GAL, however, stated that he did not object because he felt that the transfer was in Mother's best interest. In addition, Father's counsel, the child's counsel, and DES spoke in favor of the transfer.

The trial court, however, denied the Nation's motion to transfer jurisdiction, relying solely upon Mother's objection:

> THE COURT FINDS that the mother's objection to the Motion for Transfer is valid, and therefore, the Motion for Transfer of Jurisdiction is denied. Jurisdiction of this matter shall remain in the Superior Court.
>
> THE COURT SPECIFICALLY FINDS that the mother has not been determined to be incompetent even though a guardian ad litem was appointed to represent her, and the fact that she is diagnosed as schizophrenic does not make her incompetent to object to the transfer of jurisdiction.

3. Although Mother argues in her response brief that the denial of the motion to transfer was an unappealable order, by order dated February 29,

The Nation has timely appealed the denial of its motion.[3]

## DISCUSSION

Pursuant to § 1911(b) of the Act, tribal courts have concurrent jurisdiction with state courts over custody proceedings involving Indian children not residing or domiciled within the reservation. 25 U.S.C. § 1911(b). When a party petitions for the transfer of jurisdiction to the tribal court, § 1911(b) provides that

> the [state] court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, *absent objection by either parent.*

(Emphasis added.) Thus, upon the filing of a petition to transfer, the state court is required to transfer jurisdiction unless one of two things occur: 1) the court finds good cause not to transfer, or 2) either parent objects to the transfer.

■ In the instant case, the trial court specifically found that there was not good cause preventing the transfer of jurisdiction, and this finding remains unchallenged. We therefore consider only whether the trial court correctly denied the motion to transfer because of Mother's objection.

### A. Effect of Parental Objection

The GAL first argues that § 1911(b) allows the trial court to grant the motion to transfer jurisdiction regardless of a parent's objection. The GAL contends that the statute *requires* a transfer when a parent does *not* object, but does not bind the court when an objection *is* filed. The GAL argues that, under such circumstances, the trial court retains the discretion to transfer jurisdiction. We, however, disagree.

■ Consistent with uniform authority, this court has held that, under § 1911(b), a parent's "objection mandate[s] the retention of jurisdiction by the Arizona court." *In re Maricopa Juvenile Action No. JS–7359,* 159 Ariz. 232, 235, 766 P.2d 105, 108 (App.1989); *see also In re Adoption of Baby Boy L.,* 231

1996, this court ruled that the order was final and appealable.

Kan. 199, 643 P.2d 168, 178 (1982); *In re S.Z.*, 325 N.W.2d 53, 56 (S.D.1982). Such an objection has also been referred to as a "parental veto," *In re S.Z.*, 325 N.W.2d at 56, and an "absolute veto," *Guidelines for State Courts: Indian Child Custody Proceedings* ("Guideline[s]"), 44 Fed.Reg. 67,584, 67,591 (Nov. 26, 1979).[4] As explained by the Commentary to Guideline C.2, "[s]ince the Act gives the parents and the tribal court of the Indian child's tribe an absolute veto over transfers, there is no need for any adversary proceedings if the parents or the tribal court opposes transfer." *Id.; see also* Jesse C. Trentadue & Myra A. DeMontigny, *The Indian Child Welfare Act of 1978: A Practitioner's Perspective*, 62 N.D. L.Rev. 487, 518–19 (1986). A trial court therefore errs when it transfers jurisdiction over a parental veto. *In re S.Z.*, 325 N.W.2d at 56.

We have found only one reported decision that has affirmed a trial court's transfer over a purported parental objection. In *In re the Welfare of R.I.*, 402 N.W.2d 173 (Minn.App. 1987), relied upon by the GAL, the Court of Appeals of Minnesota held that, although the parent verbally objected, she had by her conduct impliedly consented to transfer. *Id.* at 177. But even assuming *arguendo* the correctness of *In re the Welfare of R.I.*, we find it to be distinguishable from the instant case.

In *In re the Welfare of R.I.*, the mother's two children were made wards of the Warm Springs Tribal Court (located within Oregon) pursuant to emergency custody orders issued in 1983, after the mother had left to live in Minnesota. In 1984, the mother returned to the Warm Springs Reservation and brought the children back to live with her in Minnesota. Later that year, a dependency petition concerning the three children was filed in Minnesota and the children were placed in temporary foster care by the state. The Tribal Court and the state court agreed that the state court "would continue to exercise 'courtesy supervision' of the case." *Id.* at 175.

Subsequently, without the permission of either the state court or the children's legal custodians, the mother took the children back onto the Warm Springs Reservation. She was then arrested for possession of narcotics and pled guilty. The tribal court gave her $300 to take the children back to Minnesota and told her that, if she did not, further custody proceedings would be instigated. The mother took the $300 and moved off the reservation, but left the children behind. The Tribal Court then issued another emergency custody order, found that the mother had abandoned the children by leaving them on the reservation, and placed the children in the custody of their aunts. *Id.*

In the state court custody proceedings, the state filed a motion to dismiss and the tribe filed a motion to transfer jurisdiction to the tribal court. Although the mother objected, the trial court dismissed the action and transferred jurisdiction because it found that the mother had consented to transfer by leaving her children on the reservation. *Id.* at 175–76.

The appellate court affirmed, as follows:

> The State argues that under the [Act], the court must transfer the action absent good cause to the contrary or parental objection, but upon parental objection, the trial court may exercise its discretion in determining whether to transfer the proceedings. *We have found no authority for the State's assertion that upon receiving a parental objection, the decision to transfer is discretionary.* Other jurisdictions have held that parental objection mandates retention of the action in state court. *See, e.g., [In re Adoption of Baby Boy L; In re S.Z.]*
>
> The Tribal Court and the State argue and the trial court found that although appellant verbally objected to the transfer of the proceedings, she impliedly consented to the transfer by voluntarily bringing the children to the Warm Springs Reserva-

---

4. Although the Guidelines, developed and published by the Bureau of Indian Affairs of the Department of the Interior, do not have binding legislative effect, *see id.* at 67,585, they "are a useful source of information for questions which might arise regarding the implementation of the Act." *In re Maricopa County Juvenile Action No. A–25525*, 136 Ariz. 528, 532 n. 4, 667 P.2d 228, 232 n. 4 (App.1983).

tion. Appellant argues that the Tribal Court had no right to issue an emergency custody order, claiming that she placed the children with her extended family in accordance with accepted Indian custom. The Tribal Court, however, found that she had abandoned the children. We will not disturb that finding. *We hold that the trial court properly concluded that appellant consented to the transfer of jurisdiction by leaving her children on the reservation.* *Id.* at 177 (emphasis added). The Minnesota appellate court thus concluded that the trial court did *not* have the discretion to transfer jurisdiction over a parent's objection, but also concluded that the mother's abandonment of her children constituted consent which negated her verbal objection.

*In re the Welfare of R.I.,* however, is distinguishable in several important respects. First, the tribe in that case had already issued custody orders making the children wards of the Tribal Court. In the instant case, there have been no prior proceedings in the Tribal Court and the child is not a ward of that court. Also, in *In re the Welfare of R.I.,* the Tribal Court declared that the children had been abandoned and therefore entered a placement order, which was within its jurisdiction. The state court was required to extend full faith and credit to that order. No such order exists here.

■ Furthermore, Mother's actions in the instant case are distinguishable from those of the mother in *In re the Welfare of R.I.,* and cannot be considered abandonment or consent to the transfer of jurisdiction. The mother in *In re the Welfare of R.I.* unilaterally brought her children onto the reservation and then abandoned them there, despite warnings from the Tribal Court that such action would result in further custody proceedings. By contrast, in the instant case, the trial court declared the child dependent over Mother's objection and, without her consent, placed the child with the paternal grandmother on the reservation.

Mother's failure to object to the child's placement cannot constitute her consent to the transfer of jurisdiction because the issue of the placement of a child is distinct from, and entirely unrelated to, the issue of jurisdiction over the proceeding. Moreover, mother never was informed that her failure to object to the child's placement would result in her waiver of the court's jurisdiction. Therefore, her failure to object cannot be taken as a knowing and intentional waiver of her jurisdictional rights. *Arizona Title Guarantee & Trust Co. v. Modern Homes, Inc.,* 84 Ariz. 399, 402, 330 P.2d 113, 114 (1958) (before waiver of a right may be inferred, there "must be an opportunity of choice between the relinquishment and the enforcement of the right in question.").

For the same reasons, the fact that Mother moved to Arkansas after the adjudication of dependency but before the placement of the child on the reservation neither constitutes abandonment of the child in favor of the tribal authorities nor does it reflect upon her wishes with respect to jurisdiction. Assuming Mother's competency to object, therefore, the trial court correctly concluded that it was required to deny the motion to transfer.

### B. Authority of the GAL

The Nation argues that the trial court erred by honoring Mother's objection because she was incompetent and, therefore, only the GAL could exercise her right to object. We disagree.

■ First, nothing in the record reflects a finding that Mother was incompetent. No request for such a finding was made and no hearing on the subject was held. Rather, the record contains only the trial court's order appointing a GAL. We therefore agree with the trial court's conclusion that Mother never was found to be incompetent.

■ Moreover, no finding of incompetency was necessary since the trial court presumably appointed the GAL pursuant to Rule 22 of the Rules of Procedure for the Juvenile Court ("Juvenile Rule[s]"), which provides, in part:

In any proceeding where a parent *appears* to be mentally incompetent or under 21 years of age, the court *may* appoint a guardian ad litem to protect the interests of such parent.

(Emphasis added.) Under this rule, a finding of incompetency is not required. Rather, it permits the appointment of a GAL when the parent merely *"appears* to be mentally incompetent." *Id.* (emphasis added).

■ Furthermore, the Rule states that the trial court *"may"* appoint a GAL, which further implies that no finding of incompetency is required since, if the parent were actually found to be incompetent, the trial court would be *required* by Rule 17(g) of the Rules of Civil Procedure ("Civil Rule[s]") to appoint a GAL, or make a similar arrangement, to protect her interests. Civil Rule 17(g) provides, in part:

> The court *shall* appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

(Emphasis added.) Under this rule, the appointment of a GAL is mandatory because it is presumed that the protected person already has been found incompetent.[5] But, unlike Civil Rule 17(g), the appointment of a GAL under Juvenile Rule 22 does not require a finding of incompetency.

Under Juvenile Rule 22, the GAL's role is to "protect the interests of [the] parent." When no finding of incompetency has been made, this role must be limited to investigating the best interests of the parent and communicating those interests to the court. Absent a judicial determination of incompetency, the GAL's determinations of the parent's best interests cannot substitute for the express wishes of that parent.[6] Accordingly, we conclude that Mother's objection to the transfer was valid, thus requiring the trial court to retain jurisdiction.

Both the Nation and the attorney for the child request that, as an alternative to affirming, we remand for a hearing to determine whether Mother is competent to object to transfer. We, however, decline to do so because no party requested such a hearing below.[7]

## CONCLUSION

Because Mother has not been determined incompetent, her objection to the Nation's motion to transfer jurisdiction is valid, requiring the Juvenile Court to retain jurisdiction over the dependency. We therefore affirm.

LANKFORD and VOSS, JJ., concur.

---

5. While no statute or rule sets forth the requirements for a finding of incompetence for the purpose of appointing a GAL, the appointment of a general guardian implicates due process and requires proof, by clear and convincing evidence, of the protected person's mental incapacity to make decisions concerning her person. Ariz. Rev.Stat. Ann. ("A.R.S.") § 14–5304(A); *In re Guardianship of Reyes*, 152 Ariz. 235, 236, 731 P.2d 130, 131 (App.1986). Furthermore, there are strict procedural requirements before a guardian can be appointed for an allegedly incapacitated person, including a mandatory hearing. A.R.S. § 14–5303(B). We assume, without deciding, that similar procedures would be necessary before appointing a GAL with broad authority to make decisions on behalf of an incompetent adult.

6. Because Mother has not been found incompetent, we do not reach the issue of a GAL's authority to make decisions for an incompetent protected person.

7. Notwithstanding, a dependency is an on-going matter, and any party can request a competency hearing pursuant to Civil Rule 17(g) at any stage of the proceeding.