7 P.3d 960

**MICHAEL J., Jr., Appellant,**

v.

**MICHAEL J., Sr., Arizona Department of Economic Security, and Tohono O'odham Nation, Appellees.**

No. 1 CA–JV 99–0127.

Court of Appeals of Arizona, Division 1, Department E.

July 3, 2000.

Hamilton Law Office by Lynn T. Hamilton, Mesa, for Appellant.

Janet A. Napolitano, Arizona Attorney General, by Stacy L. Hill, Assistant Attorney General, Phoenix, for Appellee Arizona Department of Economic Security.

Tohono O'odham Advocate Program by Frederick Lomayesva and Michele Martin, Sells, for Appellee Michael J., Sr.

Office Of Attorney General, Tohono O'odham Nation by Mark E. Curry, Deputy Attorney General and Ida B. Wilbur, Assistant Attorney General, Sells, for Appellee Tohono O'odham Nation.

## OPINION

BERCH, Judge.

¶ 1 Appellant, Michael J., Jr., seeks to avoid transfer of his dependency case from superior court to tribal court. Through his guardian ad litem ("GAL"), Michael raises the following issues for review:

(1) Whether the juvenile court erred by applying the Indian Child Welfare Act of 1978 to this case;

(2) Whether the juvenile court erred by failing to apply an "existing Indian family" exception; and

(3) Whether the juvenile court abused its discretion when it granted Father's motion to transfer the dependency proceeding to the Tohono O'odham Indian Nation tribal court.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Michael was born on December 11, 1998, exposed to cocaine and experiencing severe medical problems. Mother, a non-Indian woman who tested positive for cocaine use at the time of Michael's birth, had not received any prenatal care, was not employed, had no insurance, and was not prepared to raise a baby in her home. She requested services from the Arizona Department of Economic Security ("DES").

¶ 3 At the time of Michael's birth, Father, an enrolled member of the Tohono O'odham Indian Nation (the "Nation"), was incarcerated. Mother and Father were not married at the time of Michael's birth, Father was not named on Michael's birth certificate, and paternity had not been officially established, although Father acknowledged paternity.

¶ 4 On December 14, 1998, after determining that Michael was at risk of harm because of the unsafe and hazardous living environment at Mother's home, DES assumed custody of the infant. A DES case manager served Mother and Father with temporary custody notices and notified the Nation of Michael's birth. Two days later, DES filed a dependency petition regarding Michael.

¶ 5 On January 6, 1999, following a hearing, the juvenile court found Michael dependent as to his parents. Within two weeks, DES filed an amended dependency petition indicating that Michael was an "Indian child" who might be subject to the Indian Child Welfare Act ("ICWA") and requesting that a guardian ad litem be appointed to represent Michael in the dependency proceedings. The Nation moved to intervene, acknowledging Michael's eligibility for enrollment with the Nation. Father's counsel, DES, and an advocate for the Nation acknowledged the Na-

tion's jurisdiction over Michael's siblings. The court granted the Nation's motion and appointed the GAL to represent Michael in all further proceedings. On May 19, 1999, at the continued initial dependency hearing, Father acknowledged paternity of Michael and agreed to submit to confirmatory paternity testing. Following receipt of the test results confirming paternity, the court granted Father's motion to transfer jurisdiction to the Nation's tribal court.

¶ 6 The GAL filed a timely notice of appeal.

### ANALYSIS

1. *Standard of Review*

¶ 7 This Court reviews *de novo* the interpretation and application of a statute. *See Columbia Parcar Corp. v. Arizona Dep't of Transp.*, 193 Ariz. 181, 183, ¶ 11, 971 P.2d 1042, 1044 (App.1999). Our role when deciding jurisdictional issues under ICWA is to decide *"who* should make the custody determination concerning [the] child[ ]—not what the outcome of that determination should be." *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 53, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). After reviewing *de novo* ICWA's applicability, we review the juvenile court's order transferring a case to a tribal court for an abuse of discretion. *See Maricopa County Juv. Action No. JS–8287,* 171 Ariz. 104, 107, 828 P.2d 1245, 1248 (App. 1991).

2. *Background and Application of the Indian Child Welfare Act*

¶ 8 Congress adopted the Indian Child Welfare Act of 1978 ("ICWA"), 25 U.S.C. §§ 1901–1963, in response to concerns regarding the consequences to Indian children, Indian families, and Indian tribes of state child welfare practices that separated Indian children from their families and tribes. *See* H.R.Rep. No. 95–1386 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530. The Indian Child Welfare Act provides "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which

will reflect the unique values of Indian culture." 25 U.S.C. § 1902 (1994).

¶ 9 The Act applies to any "child custody proceeding," *see* 25 U.S.C. § 1903(1) (1994); *see also Maricopa County Juv. Action No. A–25525,* 136 Ariz. 528, 531, 667 P.2d 228, 231 (App.1983), involving an "Indian child," a term that includes "any unmarried person who is under age eighteen and ... either (a) [is] a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (1994).

¶ 10 The Act grants tribal courts exclusive jurisdiction over child custody proceedings involving Indian children domiciled on a reservation, *see* 25 U.S.C. § 1911(a) (1994), and concurrent but presumptively tribal jurisdiction in proceedings involving Indian children not domiciled on a reservation:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* that such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C. § 1911(b). All of the parties to this action agree that if ICWA applies, section 1911(b) provides the juvenile court and tribal court concurrent jurisdiction.

¶ 11 The GAL concedes that this dependency action is a child custody proceeding, but contends that ICWA does not apply because Father never established "legal" paternity. Thus, she asserts, Father has not established that he is a "parent" or that Michael is an "Indian child" within the meaning of ICWA. We disagree.

¶ 12 Although ICWA's definition of "parent" excludes an "unwed father [whose] paternity has not been acknowledged or established," 25 U.S.C. § 1903(9) (1994), the record reflects ample evidence that Father acknowledged paternity before the juvenile

court and subsequently underwent a paternity test that confirmed that he is Michael's biological father. In addition, Father submitted the Nation's written confirmation that Father is an enrolled member of the Tohono O'odham Nation and that Michael is eligible for enrollment as a member. The GAL nevertheless contends that Michael is not an "Indian child" because Father never filed a paternity action or sought legal custody of him. These actions, however, are not required. The Act merely requires that a putative Indian father acknowledge or establish paternity. *See, e.g., Coconino County Juv. Action No. J–10175,* 153 Ariz. 346, 350, 736 P.2d 829, 833 (App.1987) (court applied ICWA despite the lack of a formal paternity proceeding, where the putative father acknowledged paternity and enrolled the child in his tribe). The record contains ample evidence to support the trial court's finding that Michael is an "Indian child," and Father, his parent.

### 3. *Existing Indian Family Exception*

¶ 13 The GAL next contends that ICWA should not apply because DES did not remove Michael from an "existing Indian family." Notwithstanding ICWA's explicit provisions, some courts have refused to apply the Act unless an Indian child is being removed from an existing Indian family—that is, a family with a significant connection to the Indian community. *See In re Adoption of Baby Boy L.,* 231 Kan. 199, 643 P.2d 168, 175–76 (1982) (first state court to adopt the "existing Indian family" exception); *see also In re Bridget R.,* 41 Cal.App.4th 1483, 49 Cal.Rptr.2d 507, 516 (1996); *In re Adoption of Crews,* 118 Wash.2d 561, 825 P.2d 305, 309–10 (1992). For several reasons, we join a growing number of jurisdictions in rejecting this judicially created exception.[1]

1. The following courts reject the "existing Indian family" exception: *In re Adoption of T.N.F.,* 781 P.2d 973 (Alaska 1989); *In re Alicia S.,* 65 Cal. App.4th 79, 76 Cal.Rptr.2d 121 (1998); *In re Crystal K.,* 226 Cal.App.3d 655, 276 Cal.Rptr. 619 (1990); *In re Baby Boy Doe,* 123 Idaho 464, 849 P.2d 925 (1993); *In re Elliott,* 218 Mich.App. 196, 554 N.W.2d 32 (1996); *In re Adoption of Baade,* 462 N.W.2d 485 (S.D.1990); and *In re D.A.C.,* 933 P.2d 993 (Utah App.1997).

¶ 14 First among our reasons is to support ICWA's goal not only of preserving Indian families, but also of protecting the tribe's interests in the welfare of its Indian children and the maintenance of its culture. *See In re D.A.C.,* 933 P.2d 993, 1000 (Utah App.1997); *see also In re Elliott,* 218 Mich. App. 196, 554 N.W.2d 32, 34 (1996) (interest "in long-term tribal survival"). Adopting an existing Indian family exception frustrates the policy of protecting the tribe's interest in its children.[2] The Act is also based on the notion that protecting tribal interests best serves the interests of Indian children, another policy that adopting such an exception would thwart. *See Pima County Juv. Action No. S–903,* 130 Ariz. 202, 204, 635 P.2d 187, 189 (1981).

¶ 15 Second, the language of the Act contains no such requirement or exception. If the language of the statute is plain and unambiguous, we are counseled to simply follow the plain meaning. *See State v. Roscoe,* 185 Ariz. 68, 71, 912 P.2d 1297, 1300 (1996); *see also Dugan v. Fujitsu Bus. Communs. Sys.,* 188 Ariz. 516, 518, 937 P.2d 706, 708 (App.1997) (court construes statutes to give effect to legislature's intent). The language of the Act does not require either that the child be part of an existing Indian family or that the family be involved with the tribe; thus, requiring an "existing Indian family" before applying ICWA engrafts a judicially created condition not warranted by the language of the Act, and one that frustrates the policy of the Act. *See City of Tempe v. Fleming,* 168 Ariz. 454, 457, 815 P.2d 1, 4 (App. 1991) (citing *Town of Scottsdale v. State ex rel. Pickrell,* 98 Ariz. 382, 386, 405 P.2d 871, 873 (1965)) ("As a rule of statutory construction, we will not read into a statute something which is not within the manifest intent of the legislature as indicated by the statute

2. Section 1901 of the Act provides "that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe."

itself."). We agree with the following statement by the Idaho Supreme Court:

> Congress passed ICWA to limit state court power by creating mandatory protective procedures and minimum evidentiary standards that must be applied in child custody proceedings concerning Indian children. In light of the structure and nature of ICWA, it is inappropriate to use a judicially created exception to circumvent the mandates of ICWA.

*In re Baby Boy Doe,* 123 Idaho 464, 849 P.2d 925, 932 (1993).

¶ 16 Third, ICWA's legislative history supports our decision not to impose an existing Indian family requirement. Congress rejected an earlier version of ICWA that would have required as a prerequisite to tribal-court jurisdiction that an Indian child not living on a reservation have "significant contacts" with a tribe. *See* Indian Child Welfare Act S. 1214, 95th Cong. § 102(c) (1977), *cited in* S.Rep. No. 95–597, at 4 (1977). These provisions were deleted in subsequent legislative action; thus, it appears that Congress considered and rejected a "significant contacts" doctrine similar to the "existing Indian family" exception.[3] *See In re Adoption of S.S.,* 167 Ill.2d 250, 212 Ill.Dec. 590, 657 N.E.2d 935, 951 (1995) (McMorrow, J., dissenting). Thus, the legislative history of the Act supports the conclusion that the Act's "application to a case is contingent only upon whether an 'Indian child' is the subject of a 'child custody proceeding' as those terms are defined by the Act." *In re Adoption of Baade,* 462 N.W.2d 485, 490 (S.D.1990); *accord Juvenile Action No. JS–8287,* 171 Ariz.

at 106, 828 P.2d at 1247; *Juvenile Action No. J–10175,* 153 Ariz. at 349, 736 P.2d at 832.

¶ 17 Fourth, the United States Supreme Court has effectively undermined the imposition of an existing Indian family exception. In *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 49, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989),[4] the Court noted that ICWA reflects congressional concern "not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians." The Court emphasized "that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents." *Id.* at 52, 109 S.Ct. 1597 (quoting *In re Adoption of Halloway,* 732 P.2d 962, 969 (Utah 1986)). The Court stressed that Indian children have a corresponding interest in maintaining a relationship with the tribe, even if the parents do not share that interest. *See id.* at 49–50, 109 S.Ct. 1597. Thus, *Holyfield* indicates that ICWA applies to child custody proceedings involving Indian children regardless of the presence of an existing Indian family.

¶ 18 Finally, this Court has implicitly rejected the "existing Indian family" exception. In *Juvenile Action No. J–10175,* 153 Ariz. at 349, 736 P.2d at 832, this Court stated that "[t]he fact that a child may have been living in a non-Indian home is no reason, standing alone, to dispense with the provisions of [ICWA]." We agree and therefore decline to create an exception to ICWA's coverage in this case.

**3.** The relevant language that was subsequently deleted from Senate Bill 1214 is as follows:

> In the case of any Indian child who is not a resident of an Indian reservation or who is otherwise under the jurisdiction of a state, if said Indian child has significant contacts with an Indian tribe, no child placement shall be valid or given any legal force and effect, except temporary placements under circumstances where the physical or emotional well-being of the child is immediately and seriously threatened unless the Indian tribe with which such child has significant contacts has been accorded thirty days prior written notice of a right to intervene as an interested party in the child placement proceedings.

**4.** In *Holyfield,* two unwed Indian parents who resided on a reservation traveled off the reservation for the birth of their twins and made plans for their children to be adopted by a non-Indian family. 490 U.S. at 37–38, 109 S.Ct. 1597. After the births, the parents consented to the adoption, but the tribe moved to vacate the adoption, claiming that the state court did not have jurisdiction under ICWA. *See id.* at 38, 109 S.Ct. 1597. The Supreme Court vacated the adoption, holding that federal domicile law applies in state court proceedings involving ICWA and that the parents' tribe had exclusive jurisdiction over the proceeding even though the children were not born on the reservation and did not reside with their Indian birth parents or within the Indian culture. *See id.* at 48–49, 109 S.Ct. 1597.

4. *Trial Court's Grant of Motion to Transfer*

¶ 19 The GAL submits that the juvenile court abused its discretion by determining that the Nation could meet Michael's medical needs and by placing him with an unknown relative in Tucson, Arizona. The statements misrepresent the trial court's rulings. The court simply found that the GAL had failed to meet the burden of establishing good cause to deny the transfer.

¶ 20 "Once it is determined that a dependency proceeding involves an Indian child, the judge *must*, in the absence of good cause to the contrary, follow the provisions of the Act." *Id.* The Act requires the juvenile court to transfer jurisdiction unless (1) the court finds good cause to the contrary or (2) either parent objects to the transfer. *See* 25 U.S.C. § 1911(b); *see also Maricopa County Juv. Action No. JD–6982,* 186 Ariz. 354, 356, 922 P.2d 319, 321 (App.1996). The trial court did not find good cause not to apply the Act, and neither parent objected to the transfer.

¶ 21 Although not a party permitted by statute to thwart a transfer, *see* 25 U.S.C. § 1911(b), the GAL opposed the transfer.[5] The Bureau of Indian Affairs ("BIA") Guidelines for interpreting ICWA, however, place the burden of establishing good cause on the party opposing the petition to transfer. *See* BIA Guidelines—"Guidelines for State Courts; Indian Child Custody Proceeding," 44 Fed.Reg. 67,583, 67,584 (1979) (for assistance in interpreting ICWA, a state court may rely on the Act's interpretative guidelines drafted by the Bureau of Indian Affairs); *see also Juvenile Action No. JS–8287,* 171 Ariz. at 108, 828 P.2d at 1249 (citing 44 Fed.Reg. at 67,591); *Juvenile Action No. A–25525,* 136 Ariz. at 532 n. 4, 667 P.2d at 232 n. 4; *Juvenile Action No. S–903,* 130 Ariz. at 206, 635 P.2d at 191.

¶ 22 In this case, the GAL failed to carry the burden of showing that good cause existed for denying the transfer because she failed to present any evidence that the Nation would not provide medical care adequate to address Michael's needs. She relied upon unsupported allegations regarding the health care Michael might receive and upon the fact that the Nation did not specifically assure that it would be able to meet Michael's medical needs. Such avowals were not the Nation's obligation. Moreover, the BIA Guidelines specifically prohibit state courts from considering "[s]ocio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems" when determining the existence of good cause. *See* BIA Guidelines, 44 Fed. Reg. at 67,591(c).

¶ 23 Because the GAL failed to present any evidence that the Nation would not be able to meet Michael's medical needs or that removal from his current placement would harm him, we agree with the juvenile court that the GAL's unfounded claims of the superiority of DES services to those of the Nation fail to meet the evidentiary burden of proving "good cause." We therefore hold that the juvenile court did not abuse its discretion in granting Father's motion to transfer jurisdiction of the dependency proceedings to the Nation's court.

### CONCLUSION

¶ 24 For the foregoing reasons, we affirm the juvenile court's order transferring jurisdiction of the dependency proceedings to the Nation's court, pursuant to ICWA.

CONCURRING: RUDOLPH J. GERBER, Judge and ANN A. SCOTT TIMMER, Judge.

---

5. The parties have not questioned whether the child, through his GAL, may oppose the transfer. We therefore do not address the issue. *See Steiner v. Steiner,* 179 Ariz. 606, 613 n. 1, 880 P.2d 1152, 1159 n. 1 (App.1994); *Thompson v. Arizona Dep't of Econ. Sec.,* 127 Ariz. 293, 295, 619 P.2d 1070, 1072 (App.1980).