[Cite as *In re C.J.*, 2018-Ohio-931.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| [C.J., Jr., | : | No. 16AP-891 |
| | | (C.P.C. No. 16JU-13594) |
| B.F., | : | |
| | | (ACCELERATED CALENDAR) |
| Appellant]. | : | |
| In the Matter of: | : | |
| [C.J., Jr., | : | Nos. 17AP-162 |
| | | and 17AP-191 |
| P.G., | : | (C.P.C. No. 15JU-232) |
| Appellant]. | : | (ACCELERATED CALENDAR) |

D E C I S I O N

Rendered on March 13, 2018

**On brief:** *Goldwater Institute,* and *Aditya Dynar*; *Wegman, Hessler & Venderburg*, and *Christopher A. Holecek*, for Guardian ad litem B.F. **Argued:** *Aditya Dynar*.

**On brief:** *Bricker & Eckler LLP, Jennifer A. Flint* and *S. Courter Shimeall*; *Gila River Indian Community* and *Thomas L. Murphy*, for appellee Gila River Indian Community. **Argued:** *Jennifer A. Flint* and *Thomas L. Murphy*.

**On brief:** *Yeura Venters*, Public Defender, and *Timothy E. Pierce*, for appellee Father. **Argued:** *Timothy E. Pierce*.

**On brief:** *Giorgianni Law LLC* and *Paul Giorgianni*, for appellant Mother. **Argued:** *Paul Giorgianni*.

**On brief:** *Michael DeWine*, Attorney General, *Eric E. Murphy* and *Michael J. Handershot*, for Amicus Curiae Attorney General. **Argued:** *Michael J. Handershot*.

**On brief:**  *Law Office of Jeffrey M. Gamso* and *Jeffrey M. Gamso*, for Amici Curiae National Congress of American Indians and National Indian Child Welfare Association.

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

TYACK, J.

{¶ 1}   These consolidated appeals from decisions and judgment entries of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, present this court with a troubling procedural scenario.  At the heart of this controversy is a five-year-old child, C.J., Jr., currently living with his foster parents, who have been caring for him since he was two years old.  For the reasons that follow, we reverse and remand for further proceedings in accordance with this decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}   C.J., Jr. is an Ohio citizen, born in Ohio on July 16, 2012 to C.J., Sr. and S.R., also Ohio citizens.[1]  C.J., Jr. is currently living in an Ohio foster home with Ohio foster parents (N.B. and S.B.), with whom he is bonded, and where he was placed by an Ohio governmental agency, Franklin County Children Services ("FCCS").

### A. Proceedings in the Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

{¶ 3}   On January 8, 2015, FCCS filed a complaint in case No. 15JU-232 alleging that C.J., Jr. was a neglected, abused, and dependent child.  After a preliminary hearing, the abuse count was dismissed, and the case proceeded on allegations of neglect and dependency.  A guardian ad litem ("GAL") was appointed on January 9, 2015.  The GAL recommended that temporary custody of C.J., Jr. be taken and that custody should be granted to FCCS.  C.J., Jr. was placed in the home of foster parents N.B. and S.B. where he remains to this day.

{¶ 4}   Ohio Adm.Code 5101:2-53-03 requires the public children services agency to inquire whether a child or a family member of the child is a member or eligible for membership in an Indian tribe.  At FCCS's initial contact with the family, C.J., Sr. stated he

---

[1] C.J., Jr.'s mother, S.R., is now deceased. A suggestion of death was filed in this court on March 28, 2017.

may have Pima Native American heritage. After researching federally recognized tribes, Permanent Family Solutions Network ("PFSN"), an agency contracted by FCCS to provide the same services mandated by FCCS, was unable to locate a Pima tribe. PFSN therefore sent a notice of proceedings to the Bureau of Indian Affairs ("BIA") and the United States Department of the Interior Midwest Regional Office ("Interior") on March 10, 2015 as required by Ohio Adm.Code 5101:2-53-01(E). The notice was sent to the BIA in Minnesota but erroneously listed the mother as the parent with Indian heritage. However, the Indian Child Welfare Act ("ICWA") ancestry chart was attached to the notice, and it was filled out with the information provided by the father, C.J., Sr. Service was perfected on the BIA on March 17, 2015, and service was perfected on the Interior on March 16, 2015.

{¶ 5} FCCS has represented to this court that:

> After researching the federally recognized tribes, Pima was not located. Therefore, the ICWA filing and notifications happened on March 10, 2015 to the US Department Bureau of Indian Affairs and the US Department of the Interior Midwest Regional Office.

(Feb. 10, 2017 Memo. of Law Regarding FCCS Compliance with ICWA at 2-3); *See* Ohio Adm.Code 5101:2-53-03(E).

{¶ 6} On March 19, 2015, the Interior responded to PFSN that the notice of proceedings was insufficient and requested further information. PFSN took no further action.

{¶ 7} On March 27, 2015, the GAL recommended a temporary court commitment to FCCS as being in C.J., Jr.'s best interest while the parents were given the opportunity to work a case plan. The parents remained homeless, unemployed, and continued to struggle with addiction, but maintained a commitment to visitation with C.J., Jr.

{¶ 8} R.C. 2151.413(D)(1) states that if a child has been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period, the agency must file a motion for permanent custody. On May 5, 2016, FCCS filed a Motion for Permanent Court Commitment ("PCC"), and the GAL filed a report on June 1, 2016 recommending PCC. A hearing was scheduled for June 8, 2016. The parents failed to appear, and a continuance was granted over the objection of FCCS and the GAL.

{¶ 9}   The Gila River Indian Community ("GRIC") was brought into the case in July 2016 when the mother's attorney contacted Gila River Tribal Social Services informing them of the PCC motion.  C.J., Sr. had indicated to FCCS that he was a Pima Indian, and the GRIC asserted he was an enrolled member of that community.[2]  The GRIC is composed of Pima and Maricopa Indians. It is a federally recognized Indian tribe with a reservation in southern Arizona.

{¶ 10}  FCCS served GRIC with the motion for PCC on July 11, 2016.

{¶ 11}   On July 19, 2016, the GAL moved to terminate temporary court commitment ("TCC") to FCCS and to grant legal custody to the foster parents, N.B. and S.B.  In support of the motion, the GAL wrote:

> [C.J., Jr.'s] parents, [S.R.] (Mother) and [C.J., Sr.] (Father) continue to be homeless, to show signs of ongoing drug addiction, and to find themselves in and out of jail.  The parents started inpatient treatment but Mother was excluded from the program for violating rules.  Father left the program voluntarily after Mother's discharge.  Throughout the case the parents have visited [C.J., Jr.] consistently while not incarcerated.  However, they missed several recent visits, including one to celebrate [C.J., Jr.'s] birthday.
>
> [C.J., Jr.] was placed in the home of Mr. and Mrs. [B] on or about January 8, 2015 and has resided with the family ever since.  The foster parents have provided exemplary care for [C.J., Jr.] and have complied with all agency requests throughout the case.  [C.J., Jr.] has essentially become a member of the family, and he exhibits a close bond with his foster parents and foster siblings.  The foster parents have expressed a willingness to maintain a relationship with Mother and Father and allow them to be a part of [C.J., Jr.'s] upbringing.

(July 19, 2016 Mot. for Alternative Disposition at 2-3.)

{¶ 12}          GRIC filed a motion to intervene on July 22, 2016, and a motion for a change of jurisdiction to the Gila River Indian Community's Children's Court in Sacaton, Arizona ("tribal court") on September 14, 2016.[3]  GRIC asserted that because C.J.,

---

[2] At this time, neither C.J., Sr. nor the GRIC have provided any documentation to show that C.J., Sr. is a registered member of GRIC.

[3] On October 25, 2016, C.J., Sr.'s counsel filed a motion to transfer jurisdiction to the tribal court as well.

Sr. was an enrolled member of GRIC, C.J., Jr. was eligible for enrollment with GRIC, and therefore C.J., Jr. was an "Indian child" for purposes of the ICWA.  25 U.S.C. 1903(4).[4]  At a subsequent hearing before the magistrate, the attorney for mother, the attorney for father, and the GAL all agreed that C.J., Jr. was an Indian child.

{¶ 13} The mother, S.R., through counsel, filed an objection to the transfer of jurisdiction on September 22, 2016.  The GAL also filed an objection to the transfer of jurisdiction on September 22, 2016.

{¶ 14} On October 4, 2016, the magistrate dismissed the motion for PCC at the request of the movant, FCCS.

{¶ 15} The matter was set for an evidentiary hearing on November 2, 2016, and neither parent was present.  The magistrate heard opening statements concerning the issues of transfer of jurisdiction and whether placement with the tribe was appropriate.

{¶ 16} The attorney for FCCS represented that the family did not make any representations that the father was a member of GRIC.  Rather, father indicated that he was Pima.  Therefore, notification was sent to the BIA in the Interior along with the ancestry chart indicating the father's heritage was Pima.

{¶ 17} The attorney for the father represented to the court that C.J., Sr. was eligible or potentially eligible for no-cost housing on the reservation if he were to move there, and that he could be put on a waiting list for a program on the reservation where the reservation would build a home for its members.  The attorney further represented that the community earned income from its various casinos and that C.J., Sr. was entitled to a share of that and had received checks from there.  Also, the attorney represented that the house where it was proposed C.J., Jr. be placed had acreage and some horses.

{¶ 18} The GAL represented that jurisdiction should remain with the court in Ohio based on the mother's objection under 25 U.S.C. 1911, and the GAL's objection on grounds of forum non conveniens.  The GAL also argued that under 25 U.S.C. 1915(b), the child should be placed in the least restrictive setting which most approximates a family and in which his special needs may be met, and is within a reasonable proximity to his home. Also,

---

[4] 25 U.S.C. 1903(4) provides: " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."

the GAL argued that the court could make a good cause determination to deviate from the placement preferences listed in the statute based on the request of the biological parent or the child if he is of sufficient age, the extraordinary physical or emotional needs of the child as established by the testimony of a qualified expert witness, and the unavailability of suitable families after a diligent search. The GAL also cited case law that a close relationship with a foster mother and the psychological damage that would be caused by removal was not an abuse of discretion in finding good cause to deviate from the placement preferences.

{¶ 19} The GAL argued that the placement that is least restrictive to C.J., Jr.'s relationship with his parents was to remain with the foster parents. He indicated that the mother had no relationship or no positive relationship with the father's family in Arizona, that the father had a strained relationship with the family in Arizona, and that the bond between the biological parents and the foster parents was among the strongest he had ever witnessed. The GAL stated that the foster family most approximated a family, and that C.J., Jr.'s special psychological needs were being met in his current foster home. Finally, the GAL noted that the foster family lives in close proximity to where C.J., Jr. has lived his entire life, and the tribe was roughly 2,000 miles away. The GAL argued that there was good cause to deviate from ICWA's placement preference and that it was in C.J., Jr.'s best interest for the court to grant his motion seeking legal custody with the foster parents.

{¶ 20} The mother's attorney represented that the mother objected to the transfer of jurisdiction, and on that basis alone, the court should deny transfer of jurisdiction to the tribal court. The mother's attorney also argued that good cause existed to deviate from the ICWA placement preferences. First, S.R.'s attorney argued C.J., Jr. has received excellent care in his foster placement. He has strongly bonded with his foster parents, and the attorney believed that it would cause him severe distress to be removed, more so than one would expect from normal bonding with a foster parent. Both the GAL and the attorney for the mother cited to a report by Dr. Pawlarczyk in support of this point. The mother's attorney represented that the foster parents had expressed an interest in learning about C.J., Jr's native heritage long prior to the intervention of GRIC and planned to involve C.J., Jr. in his native culture. They had also allowed his hair to grow long in accordance with tribal culture. The attorney for the mother also indicated that the father's probationary status was another hurdle to reunification efforts if he were not allowed to leave the state.

{¶ 21} The court took testimony from GRIC witnesses by telephone and heard argument on GRIC's motion to intervene, motion to transfer jurisdiction, and placement of the minor child. The GRIC ICWA case manager testified that GRIC first became aware of the case when the mother's attorney contacted Gila River Tribal Social Services. The case manager also testified that C.J., Sr. was an enrolled member of the tribe, and that C.J., Jr. was eligible for enrollment. The case manager testified she had located relatives of C.J., Sr., who would be willing to provide care for C.J., Jr., and that certain programs would be available such as educational, medical, dental, and behavioral health, as well as an opportunity to learn the language and to obtain low cost housing.

{¶ 22} The caseworker for PFSN testified that the current recommendation was for C.J., Jr. to stay in the current foster home and remain having contact with his biological parents, and that it was in the best interest of the child to eventually reunify with his parents if they were able to become sober, have regular income, have safe and stable housing, and meet C.J., Jr.'s basic, protective, and educational needs.

{¶ 23} The court granted the motion to intervene, and granted a request for an in camera interview with C.J., Jr. The matter was continued until November 14, 2016.

{¶ 24} On November 14, 2016, the magistrate conducted a hearing in which the magistrate noted for the record that a phone call had been placed to all counsel the previous week to inform them that the magistrate was inclined to rule in favor of the transfer of jurisdiction to the tribal court. GRIC informed the court that it intended to file a petition for Child in Need of Care on the dismissal of the matter. The mother and father again failed to appear, and the hearing was continued until December 15, 2016.

{¶ 25} The next day, November 15, 2016, the GAL filed a new complaint under case No. 16JU-13594 alleging that C.J., Jr. was a neglected, abused, and dependent child. The GAL did this after learning that the trial court was inclined to find that the FCCS notification to the tribe was not sufficient, and the court was inclined to dismiss case No. 15JU-232. GRIC was served by registered mail with the complaint in case No. 16JU-13594.

**B. Ex Parte Proceedings in Tribal Court**

{¶ 26} On December 13, 2016, two days before the scheduled hearing before the magistrate, GRIC filed a Child in Need of Care Petition in the tribal court that was granted ex parte as an order granting emergency temporary wardship. The tribal court order in

case No. JC-2016-0434 made C.J., Jr. a ward of the tribal court and placed him under the care, custody, and control of the Gila River Tribal Social Services.  It ordered C.J., Jr. to be placed in the physical custody of a great aunt and uncle, M.P. and T.P., whom C.J., Jr. has never met, and authorized them to sign for medical and educational needs deemed necessary.  It ordered C.J., Jr.'s parents to appear in the tribal court for all hearings and adjudications, and it made C.J., Jr.'s parents financially responsible for C.J., Jr.

### C. Further Proceedings in the Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

{¶ 27} On December 15, 2016, the magistrate convened a hearing with respect to both cases, Nos. 15JU-232 and 16JU-13594.  The magistrate read her decision into the record.  This was followed by a written decision on December 22, 2o16, finding that proper notice was not given to GRIC pursuant to 25 U.S.C. 1912(a).[5]  The magistrate found that PFSN did not respond to an inquiry made by the Interior nor did PFSN correct the notice of proceedings to reflect that the father was the parent with Indian heritage. The magistrate found that GRIC testified that the father is a member of their tribe and that C.J., Jr. is considered to be an Indian child.

{¶ 28} The magistrate found that PFSN did not follow Ohio Adm.Code 5101:2-53-03 when it provided notice to the BIA in Minnesota instead of Arizona and when it did not list the father as having Indian heritage.  The magistrate further found that "this improper notice has so prejudiced this case that the case is null and void.  Therefore, the Court is dismissing case No. 15JU-01-232." (Dec. 22, 2016 Mag. Dec. and Jgmt. Entry at 2.); (Dec. 15, 2016 Tr. at 7.)  In sum, the magistrate dismissed case No. 15JU-232 in its entirety, granted the motion for change of jurisdiction, dismissed the remaining motions, including the objections to the transfer of jurisdiction, terminated the wardship of C.J., Jr., and

---

[5] **25 U.S.C. 1912(a) provides:** "Notice; time for commencement of proceedings; additional time for preparation. In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided*, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (Emphasis sic.)

terminated the TCC to FCCS. The magistrate made all of its orders effective December 15, 2016. The trial court adopted the decision of the magistrate on December 22, 2016.

{¶ 29} The December 15, 2016 hearing then proceeded when the magistrate found sufficient information to proceed on the GAL's complaint in case No. 16JU-13594. The magistrate found that it had concurrent jurisdiction with the Arizona court, and proceeded to address temporary orders in case No. 16JU-13594. The magistrate stated that she found no reason to deviate from BIA guidelines which required that the child be placed in an Indian home or with an Indian relative. The magistrate then granted a temporary order of custody to the GRIC, and proceeded to discuss plans for GRIC to pick up C.J., Jr. and transport him to Arizona. The magistrate then set the matter for a final hearing on February 3, 2017.

{¶ 30} The GAL immediately objected at the conclusion of the magistrate's reading of her decision on the record. On the same day as the December 15, 2016 hearing before the magistrate, the trial court conducted a hearing on case No. 16JU-13594 based on the oral objections and a request for a stay from the GAL based on the temporary custody order made with the intention that authorities from Arizona would be coming to Columbus, Ohio to pick up C.J., Jr.

{¶ 31} On December 16, 2016, the trial court signed an entry continuing the temporary order of custody of C.J., Jr. with FCCS in case No. 16JU-13594. The trial court ordered temporary custody of C.J., Jr. to FCCS until December 28, 2016, at which time the temporary custody order would terminate, and custody would proceed pursuant to the tribal court order. A second order was filed on December 28, 2016, extending temporary custody to FCCS until December 29, 2016 to suit the travel arrangements of GRIC and at that time terminating custody with FCCS and otherwise giving full faith and credit to, and enforcing the tribal court order.

{¶ 32} On December 28, 2016, the GAL filed a motion in this court for an emergency stay in case No. 16JU-13594 in part because C.J., Jr. had a predictably negative reaction to being relocated thousands of miles away with people he had never met, the parents lacked the resources to continue visitation in Arizona, the mother had objected to the transfer of jurisdiction, and because the tribal court had entered its orders without notice to the

parties.  On December 29, 2016, this court granted a stay of the December 16, and 28, 2016 trial court orders granting custody of C.J., Jr. to GRIC pending this appeal.

{¶ 33} The GAL filed a timely notice of appeal in case No. 16JU-13594 on December 29, 2016.

{¶ 34} On January 6, 2017, GRIC moved to intervene in case No. 16JU-13594.

{¶ 35} On February 23, 2017, the mother, S.R., and the GAL filed a motion for relief from judgment, pursuant to Civ.R. 60(B), in case No. 15JU-232 requesting the trial court to vacate the December 22, 2016 magistrate's decision and the December 22, 2016 judgment entry adopting the magistrate's decision.

{¶ 36} The attorney for mother, S.R., filed a notice of appeal from the December 22, 2016 judgment entry on March 2, 2017.

{¶ 37} On March 9, 2017, the magistrate entered a decision and entry in case No. 15JU-232 declaring that it was dismissing case No. 15JU-232 for the reason that it had been refiled under case No. 16JU-13594.  The GAL filed a notice of appeal from that entry in case No. 15JU-232 on March 15, 2017.

{¶ 38} The attorney for the mother, S.R., filed a suggestion of death in case No. 15JU-232 on March 21, 2017, indicating that the mother's death was reported to have occurred on March 18, 2017.

{¶ 39} Construing the March 9, 2017 entry as a decision on the Civ.R. 60(B) motion, on March 21, 2017, the GAL asked this court to remand the consolidated cases to the juvenile division in order for the court to clarify the March 9, 2017 entry.  On April 6, 2017, this court stayed the appellate cases and remanded the matter to the trial court for the purpose of allowing the trial court to rule on the pending Civ.R. 60(B) motion.

{¶ 40} On May 24, 2017, the trial court entered its decision and entry denying the motion for relief from judgment and finding that the March 9, 2017 entry was superfluous because the December 22, 2016 decision and judgment entry terminated the case.  In that same decision and entry, the trial court stated that the underlying facts and issues of case No. 15JU-232 were "inextricably linked" to case No. 16JU-13594.  (May 24, 2017 Decision and Jgmt. Entry at 9.)  This court then reactivated the consolidated cases.

### D. Proceedings in the Court of Appeals

{¶ 41} There are three appeals consolidated in this court.

{¶ 42} Case No. 16AP-891 is an appeal by the GAL from the December 16, and December 28, 2016 orders in case No. 16JU-13594. GRIC filed a motion to dismiss this appeal on January 30, 2017, and C.J., Sr. filed a motion to dismiss this appeal on February 1, 2017.

{¶ 43} Case No. 17AP-191 is an appeal by the GAL from the juvenile court's entry of March 9, 2017 dismissing case No. 15JU-232. GRIC filed a motion on March 29, 2017 to dismiss this appeal. On August 18, 2017, GRIC filed a motion to strike the GAL's brief in this appeal.

{¶ 44} Case No. 17AP-162 is an appeal by the mother, S.R., from the dismissal of case No. 15JU-232. C.J., Sr. filed a motion on March 31, 2017 to dismiss this appeal. A motion to substitute a proper person in place of the deceased S.R. was filed on June 30, 2017. GRIC filed a motion to strike the GAL's brief in this appeal on August 18, 2017. GRIC filed a motion to dismiss this appeal on August 18, 2017.

**1. Motions to Strike the Briefs of the GAL**

{¶ 45} GRIC has moved to strike the GAL's brief in case No. 17AP-162, the mother's appeal from the dismissal of case No. 15JU-232, on grounds that the GAL is not the appellant. In GRIC's motion to strike the GAL's brief in case No. 17AP-191, GRIC contends that the GAL is challenging rulings other than the March 9, 2017 entry dismissing case No. 15JU-232.

{¶ 46} The GAL is a party in these proceedings. Juv.R. 2(Y) states:

> "Party" means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court.

The GAL has an obligation to advocate for the child's best interests and the child's wishes, and this court has an interest in the GAL's position and arguments. If we were to strike the GAL's brief on grounds that he is not the appellant, we would still wish to hear from him as an amicus.

{¶ 47} We deny the motions to strike because throughout these proceedings the trial court has treated case Nos. 15JU-232 and 16JU-13594 as the same case. The magistrate

stated in its March 9, 2017 order that it was dismissing case No. 15JU-232 for the reason that it had been refiled under case No. 16JU-13594.  The trial court reiterated that position in its decision and entry denying Civ.R. 60(B) relief, when it stated that "the underlying facts and issue of this case [Case No. 15JU-232] are inextricably linked to Franklin County Juvenile Case No. 16JU-13594."  (May 24, 2017 Decision and Entry at 9.)  "Inextricable" has been defined as "impossible to disentangle or separate."  *New Oxford American Dictionary*, 889 (3d Ed.2010).

{¶ 48} The three appeals are consolidated.  There are procedural anomalies in the juvenile court proceedings. The issues are interrelated and complex.  This court has a keen interest in hearing the arguments of all parties in what is essentially one case about one child.  The motions to strike the briefs of the GAL are denied.

**2. Motion to Substitute a Proper Person in Place of Birth Mother, S.R.**

{¶ 49} On March 28, 2017, appellate counsel for the mother, S.R., filed a suggestion of death of S.R. in this court.  The trial counsel for S.R. also filed a suggestion of death in case No. 15JU-232 on March 21, 2017, indicating that the mother's death was reported to have occurred on March 18, 2017.  On April 6, 2017, this court filed an entry stating that despite the suggestion of death, "[t]hese appeals shall, nonetheless, proceed as permitted under App.R. 29(A)."

{¶ 50} On June 30, 2017, the GAL filed a motion to substitute a proper person in place of the birth mother, S.R., pursuant to App.R. 29.  The GAL requested that C.J., Jr., his foster parents, N.B. and S.B., or FCCS be substituted to continue the birth mother's appeal.  On July 21, 2017, the GRIC filed a combined reply of appellee-GRIC in support of motion(s) to dismiss appeals in case Nos. 17AP-162 and 17AP-191.  Contained in that reply was an argument that S.R.'s appeal be dismissed because no party had sought substitution of S.R.'s personal representative.  As can be seen by the above recitation, this assertion was false.  In a subsequent reply filed July 28, 2017, the GAL suggested that S.R.'s court appointed appellate counsel of record, Paul Giorgianni, be substituted in S.R.'s place.

{¶ 51} App.R. 29(A) provides in pertinent part:

> If a party dies after a notice of appeal is filed or while a proceeding is otherwise pending in the court of appeals, * * * [and] * * * the deceased party has no representative, any party

> may suggest the death on the record and proceedings shall
> then be had as the court of appeals may direct.

{¶ 52} App.R. 29 empowers a court of appeals to direct that an appeal may continue and be decided as if the deceased party were not deceased. *Harden v. Villas of Cortland Creek, LLC*, 11th Dist. No. 2012-T-0088, 2013-Ohio-4629, ¶ 1, fn. 1. A deceased party's appellate counsel may be substituted as the party/representative for the appeal. *State v. Hagler*, 2d Dist. No. 26548, 2016-Ohio-5350, ¶ 18.

{¶ 53} Accordingly, we grant the motion of the GAL to substitute Paul Giorgianni as the party/representative for S.R.

### 3. Motions to Dismiss the Appeal

{¶ 54} The GAL's appeal in case No. 17AP-191 was filed on March 15, 2017 and seeks to appeal a March 9, 2017 entry dismissing case No. 15JU-232. The entry ordered the complaint in case No. 15JU-232 to be dismissed for the reason that it was refiled under case No. 16JU-13594. GRIC argues the March 9, 2017 entry is a legal nullity and cannot stand as a final order from which an appeal can be taken.

{¶ 55} In a subsequent ruling on the Civ.R. 60(B) motion filed in case No. 15JU-232, the trial court stated that the March 9, 2017 entry "was superfluous in nature because the Magistrate's Decision adopted by way of Judgment Entry filed on December 22, 2016 clearly terminated the case." (May 24, 2017 Decision and Jgmt. Entry at 6-7.) However, the trial court also stated that the underlying facts and issues of case No. 15JU-232 were inextricably linked to case No. 16JU-13594. Both notices of appeal were filed after the Civ.R. 60(B) motion was filed and before the trial court ruled on the motion.

{¶ 56} Given the several pending motions and multiple case numbers in this matter, it is important to remember that this is one case about one child, C.J., Jr. On December 22, 2016, the magistrate issued a decision dismissing case No. 15JU-232 based on improper notice and declaring it null and void. Prior to the dismissal of case No. 15JU-232, the GAL had initiated case No. 16JU-13594. After finding Case No. 15JU-232 null and void, the magistrate and the trial court then proceeded to issue orders in case No. 16JU-13594.

{¶ 57} At the time the magistrate declared case No. 15JU-232 null and void, C.J., Jr. was placed in the position he was in at the inception of that case. He remained in the foster home of N.B. and S.B. under the temporary custody of FCCS under the auspices of case No.

16JU-13594, the only remaining live case, a case that had been initiated before the dismissal and declaration that case No. 15JU-232 was null and void. The only reason the magistrate could issue the December 22, 2016 judgment entry in the way that it did is that the court had case No. 16JU-13594 pending, thereby providing a means by which it could perpetuate the case. Were it not for case No. 16JU-13594, the magistrate would have been compelled to restore custody to the birth parents, a fact the magistrate acknowledged at the December 15, 2016 hearing.

> I can't just give you [GRIC] emergency custody without having something to give it on here. I need a filing to be able to do that.
>
> * * *
>
> [T]he Court's going to find sufficient information to proceed on 16JU-13594 at this time, because in Ohio anybody can file a complaint with regard to the care and well-being of a child at this time pursuant to Ohio law. So, let's talk about temporary orders at this time.

 (Dec. 15, 2016 Tr. at 20, 22.)

{¶ 58} The December 15, 2016 hearing before the magistrate was expressly conducted under both case numbers. The magistrate did not indicate that it was relinquishing jurisdiction because the magistrate explicitly set the case for a further proceeding on February 2, 2017. Thus, despite what was put forth in the judgment entry of December 22, 2016, the juvenile court continued to exercise jurisdiction over the case.

{¶ 59} Nevertheless, the juvenile court declared case No. 15JU-232 to be null and void. By definition, a nullity is something that is legally void. *Black's Law Dictionary*, 1098 (8th Ed.2004). *See also Fravel v. Columbus Rehab. & Subacute Inst.*, 10th Dist. No. 16AP-270, 2016-Ohio-5807, ¶ 15, quoting *PNC Bank, N.A. v. J & J Slyman, L.L.C.*, 8th Dist. No. 101777, 2015-Ohio-2951, ¶ 20. ("A legal nullity by definition is something that 'never occurred.' ")

{¶ 60} If a complaint is null and void, the way to correct it is by filing a new complaint. *Alliance Group v. Rosenfield,* 115 Ohio App.3d 380, 388 (1st Dist.1996). That is what occurred here when the GAL filed a new complaint on November 15, 2016 in case No. 16JU-13594. Appeal No. 16AP-891 is the GAL's appeal from the December 16, and

December 28, 2016 orders of the trial court continuing the temporary order of custody of C.J., Jr. with FCCS in case No. 16JU-13594. The trial court ordered temporary custody of C.J., Jr. to FCCS until December 28, 2016, at which time the temporary custody order would terminate, and custody would proceed pursuant to the tribal court order.  A second order was filed on December 28, 2016, extending temporary custody to FCCS until December 29, 2016 to suit the travel arrangements of GRIC and otherwise giving full faith and credit to, and enforcing the tribal court order.  The GAL filed a timely appeal from these orders on December 29, 2016.  Those trial court orders were stayed by order of this court.

{¶ 61} Case No. 15JU-232 was declared null and void, and case No. 16JU-13594 was filed in part so that FCCS could continue to maintain temporary custody of C.J., Jr. The trial court proceeded to enter orders on December 16, and 28, 2016 that were appealed to this court as part of a consolidated appeal.  Throughout these proceedings, the juvenile court has treated case Nos. 15JU-232 and 16JU-13594 as the same case.  The only realistic way to view these cases is to consider case Nos. 15JU-232 and 16JU-13594 as one case. After invalidating prior orders in case No. 15JU-232 for a violation of ICWA, the trial court continued the custody of C.J., Jr. under case No. 16JU-13594 and entered final orders on December 16, and 28, 2016 from which a timely appeal was taken.  The juvenile court effectively merged the two cases, case Nos. 15JU-232 and 16JU-13594 into one case, and the final appealable orders in that unified case are the December 16, and 28, 2016 orders granting custody of C.J., Jr. to GRIC.  As such, the motion to dismiss case No. 17AP-191 must be denied.

{¶ 62} GRIC and C.J., Sr. have also filed motions to dismiss the appeal in case No. 16AP-891 on grounds that the appeal is barred by res judicata, and the tribal court has exclusive jurisdiction.  These motions make merit-based arguments that are more properly addressed in our discussion of the merits of the appeal.  For now, it is sufficient to note that the GAL filed a timely notice of appeal from the December 16 and 28, 2016 decisions and entries.  The motions to dismiss the appeal in case No. 16AP-891 are denied.

{¶ 63} Case No. 17AP-162 is an appeal by S.R. from the dismissal of case No. 15JU-232.  C.J., Sr. filed a motion on March 31, 2017 to dismiss this appeal on grounds that it was untimely filed.  GRIC filed a motion to dismiss this appeal on August 18, 2017 on grounds

that the mother had failed to file a brief and a failure to prosecute. The mother's attorney has since filed a brief and we deem it to be timely filed.

{¶ 64} The final issue to be decided by way of a motion to dismiss is the issue of the timeliness of S.R.'s appeal in case No. 17AP-162. The appointed trial counsel for the mother, S.R., did not file a notice of appeal from the December 22, 2016 judgment entry until March 2, 2017.

{¶ 65} The general rule in Ohio is that a notice of appeal is ineffectual unless it is filed within 30 days of the final appealable order being appealed. App.R. 4(A). Here, even if we deem the final appealable order to be the December 16 and 28, 2016 decisions and entries in case No. 16JU-13594, S.R.'s appeal was filed after the limitations period for filing the notice of appeal had expired.

{¶ 66} The question then is whether this court may hear an appeal on behalf of the mother in a proceeding that effectively terminates her parental rights when the court-appointed trial counsel filed the notice of appeal after the limitations period for so doing expired?

{¶ 67} S.R. objected to the transfer of jurisdiction clearly and unequivocally on the record at the December 15, 2016 magistrate's hearing, at the December 15, 2016 hearing before the judge, in writing on September 22, 2016 by filing an objection to the transfer of jurisdiction, and in a written brief in support of objection to transfer of jurisdiction.

{¶ 68} As C.J., Jr.'s mother, S.R. has statutory rights to effective assistance of counsel and appellate review as well as Federal and Ohio Constitutional Guarantees of Due Process and Equal Protection. *See In re K.J.*, 10th Dist. No. 15AP-21, 2015-Ohio-2244, ¶ 9-12. Here, the failure of S.R.'s appointed trial counsel to file a notice of appeal within the 30-day limitations period implicates the statutory right to effective assistance of counsel, the statutory right to appellate review, the constitutional due process/equal protection guarantee with respect to effective assistance of counsel, and the constitutional due process/equal protection guarantee with respect to appellate review. R.C. 2151.352; Juv.R. 4; R.C. 2505.03(A); *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 93.

{¶ 69} However, in the *K.J.* case, a divided panel of this court ruled that the right to effective assistance of appellate counsel in a PCC case could not override the jurisdictional limitations of App.R. 4. *Id.* at ¶ 17. The majority in *K.J.* relied heavily on the case of *In re*

*B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558. In that case, the Supreme Court of Ohio held that due process does not require that a parent be afforded the right to file a delayed appeal from a judgment terminating parental rights. *Id.* at syllabus. In that case, however, before affirming a dismissal of the appeal, the court conducted the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), possibly implying that in some circumstances due process considerations might require the allowance of a delayed appeal of a judgment terminating parental rights.

{¶ 70} The third judge on the panel in *K.J.* would have applied the *Mathews* test on a case-by-case basis to determine whether procedural due process would afford a right to a delayed appeal. *Id.* at ¶ 4. If we were to do so in this case, the *Mathews* factors would appear to favor granting relief from the failure of appointed trial counsel to file a notice of appeal within the limitations period.

{¶ 71} The United States Supreme Court in *Mathews* set forth the test for determining what process is due in a given situation:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

{¶ 72} Here, the private interest of a child and a parent to maintain their relationship is commanding and fundamental. *B.C.* at ¶ 19. The December 22, 2016 judgment transferring the case to GRIC in Arizona would have effectively terminated S.R.'s parental rights. The Supreme Court of Ohio has recently held that "when the state seeks to terminate a parent's parental rights, the parent has the right to counsel." *In re R.K.*, ____ Ohio St.3d ____, 2018-Ohio-23, syllabus. The Supreme Court of Ohio has likened the termination of parental rights to the family-law equivalent of the death penalty. *Id.* at ¶ 1. Thus, the court found that "it is critical that the rights of a parent who faces the permanent termination of parental rights are appropriately protected. " *Id.*

{¶ 73} The second *Mathews* factor, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards also favors granting relief. When appointed counsel fails, contrary to the client's wishes, to file a notice of appeal, such deficient performance deprives a litigant of more than a fair judicial proceeding, it deprives the litigant of an appellate proceeding altogether, and prejudice is presumed. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *K.J.* at ¶ 9.

{¶ 74} Case No. 15JU-232 was dismissed and transferred based on a finding that GRIC did not receive a timely notice as required by 25 U.S.C. 1912. S.R.'s statutory right to object to the transfer was dismissed. There was no consideration of the best interests of C.J., Jr. The risk of an erroneous deprivation of S.R.'s and C.J., Jr.'s rights was great.

{¶ 75} The third *Mathews* factor, the government's fiscal and administrative costs, is insignificant. The notice of appeal was filed on March 2, 2017, approximately 40 days late, and has had no effect on the consideration of this appeal.

{¶ 76} Other governmental interests weigh in favor of protecting S.R.'s interests. The state, in the person of the Attorney General of Ohio, has filed an amicus brief opposing transfer in this case. The GAL is also opposed to transfer.

{¶ 77} Despite these factors, this court is constrained by binding precedent from the Supreme Court of Ohio. The appeal in *B.C.* went up to the Supreme Court on a certified conflict between the Fifth District Court of Appeals and the Second District Court of Appeals. The certified question the court answered in the negative was this: "Do the delayed appeal provisions of App.R. 5(A) extend to cases involving the termination of parental rights?" *Id.* at ¶ 11. As discussed in *K.J.*, at ¶ 15, 17, the opening paragraph of *B.C.*, compels us to conclude that a right to a delayed appeal does not apply in an appeal from a termination of parental rights.

{¶ 78} "The issue in this appeal is whether due process requires that a parent whose parental rights have been terminated be afforded the right to a delayed appeal from the judgment of termination, comparable to the delayed appeal afforded to certain defendants by App.R. 5(A). We hold that due process does not entitle the parent in such a case to file a delayed appeal." *B.C.* at ¶ 1.

{¶ 79} Accordingly, and based on *B.C.*, and *K.J.*, we grant the motion of C.J., Sr. to dismiss the mother's appeal in case No. 17AP-162.

## II. ASSIGNMENTS OF ERROR

{¶ 80} The GAL has assigned the following as error:

> The Juvenile Division erred by: (1) giving full faith and credit to the Gila River Indian Community ("GRIC") tribal court order, (2) transferring jurisdiction of the case to the GRIC tribal court, and (3) transferring legal custody of C.J. Jr. to tribal social services and physical custody of C.J. Jr. to M.P. and T.P. ---racially-matched strangers he has never met --- thereby violating the Due Process and Equal Protection Clauses of the United States and Ohio Constitutions, and the Full Faith and Credit Clause of the United States Constitution.

## III. ANALYSIS

### A. Transfer of Jurisdiction

{¶ 81} The December 22, 2016 entry purported to grant the request of GRIC for a change of jurisdiction to the tribal court in Arizona pursuant to 25 U.S.C. 1911(b).

{¶ 82} 25 U.S.C. 1911 is entitled "Indian tribe jurisdiction over Indian child custody proceedings" and provides as follows:

> (a) Exclusive jurisdiction. An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

> (b) Transfer of proceedings; declination by tribal court. In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, that such transfer shall be subject to declination by the tribal court of such tribe.

(c)  State court proceedings; intervention. In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

(d)  Full faith and credit to public acts, records, and judicial proceedings of Indian tribes. The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

{¶ 83} Pursuant to 25 U.S.C. 1911(a), the tribal court has exclusive jurisdiction between a state court and a tribal court when a child is residing on or domiciled within a reservation. Such is not the case here. C.J., Jr. is not a GRIC member, he has never been on GRIC soil, and he is not residing in and is not domiciled in GRIC. Since C.J., Jr. is not domiciled on the reservation, under 25 U.S.C. 1911(a), GRIC does not have exclusive jurisdiction.

{¶ 84} What is applicable to this case is subsection (b) which provides for an absolute parental veto over transfer to a tribal court when the state court and the tribal court have concurrent jurisdiction. Such is the case here.

{¶ 85} 25 U.S.C. 1911(b) indicates concurrent jurisdiction exists between a state court and a tribal court when the child is not domiciled on a reservation. The state court is required to transfer the case to the tribal court unless: (1) objection by either parent, (2) the tribal court declines jurisdiction, or (3) the state court finds good cause to decline transfer. An objection by either parent to transfer the case to the tribal court is an absolute bar to the transfer. *In re Appeal in Maricopa Cty. Juvenile Action No. JD-6982*, 922 P.2d 319 (Ariz.App.1996). Such an objection is considered an absolute veto. *Id.* at 322. "[T]he plain language of Section 1911(b) of the statute gives her, as natural parent, a veto right over a request to transfer jurisdiction to the tribal court." *In re Taylor*, 5th Dist. No. 2005 AP 11 0081, 2006-Ohio-6025, ¶ 44.

{¶ 86} Here, C.J., Jr.'s mother objected to the transfer to the tribal court, but it appears that the juvenile court may have erroneously thought that transfer to the tribal court was required because of the deficient notice under ICWA.

{¶ 87} In addition to the absolute parental veto, the juvenile court was required under the statute to evaluate whether there was good cause to grant the transfer based on the objection of the GAL.  The GAL objected to the transfer of jurisdiction on the basis that there existed good cause to prevent transfer.  The GAL argued that the court could apply a modified doctrine of forum non conveniens as well as a consideration of the best interests of the child in deciding where the matter should be heard.

{¶ 88}  25 U.S.C. 1911(b) states that a case shall be transferred "in the absence of good cause to the contrary."  Good cause includes consideration of the child's best interests.  *In re Robert T.*, 200 Cal. App.3d 657, 667 (1988) ("best interests" an additional ground to forum non conveniens factors).  The stated purpose of ICWA is to "protect the best interests of Indian children."  25 U.S.C. 1902.  Thus, the juvenile court should have considered the best interests of C.J. Jr. in deciding whether to transfer jurisdiction to the tribal court.  Good cause to deny transfer has been found where, as here, almost all the parties and witnesses reside in the county of the state court and have no contact with the tribal court.  *In re N.L.*, 754 P.2d 863, 869 (Okla.1988).  In Ohio, the courts must consider which forum is more convenient with a view toward protecting the best interests of the child.  *Mayor v. Mayor*, 71 Ohio App.3d 789, 793 (8th Dist.1991); *Daerr v. Daerr*, 41 Ohio App.3d 206, 207 (9th Dist.1987).

{¶ 89} Here, there was no determination made as to whether good cause existed to preclude transfer to the tribal court.  The juvenile court erred as a matter of law in disregarding the parental veto, disregarding the good cause provision of 25 U.S.C. 1911(b), and transferring jurisdiction to GRIC's tribal court.

### B. Full Faith and Credit to the Tribal Court Order

{¶ 90} The GAL argues the trial court erred in giving full faith and credit to the tribal court order.  In both its December 16, and 28, 2016 orders, the juvenile court concluded that "custody shall be pursuant to JC-2016-0434," the tribal court's ex parte order making C.J., Jr. a ward of the tribal court and placing him under the care, custody, and control of the Gila River Indian Community Tribal Social Services.  The tribal court order was

procured by GRIC from its own tribal court before the Ohio court transferred jurisdiction, before case No. 15JU-232 was dismissed, and was procured without notice to all the parties, and purports to exercise personal jurisdiction over C.J., Jr.'s parents as well as C.J., Jr., who is not and never has been domiciled on, resided in, or even visited the reservation.

{¶ 91} ICWA requires a state to give the same credit to tribal court judgments as it gives to judgments of the courts of sister states. *Starr v. George*, 175 P.3d 50, 55 (Alaska 2008). Full faith and credit requires that the issuing court have personal jurisdiction when it entered its judgment. *Id.*

{¶ 92} Whether a tribal court has personal jurisdiction over a party is analyzed using the minimum contacts standard set forth in *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *In re J.D.M.C.*, 2007 S.D. 97, 739 N.W.2d 796, ¶ 44 (S.D.2007).

{¶ 93} GRIC has a long-arm statute by which it claims personal jurisdiction over C.J. Jr. by virtue of the fact that he is under 17 years of age and allegedly eligible for enrollment into the community without regard to his domicile, and personal jurisdiction over his parents by virtue of the same statute.

{¶ 94} GRIC Code Section 7.104(B) provides in pertinent part:

> Personal Jurisdiction. The Children's Court shall have personal jurisdiction over and its orders shall have effect with respect to:
>
> * * *
>
> 2. Person under 18 years of age, who may be eligible for enrollment into the Community, without regard to domicile;
>
> * * *
>
> 5. The parent(s), guardian(s) or household members of such person pursuant to this subsection.

{¶ 95} Despite this provision, neither C.J. Jr., nor his birth parents, nor the foster parents have the minimum contacts necessary for the tribal court to exercise personal jurisdiction over them consistent with due process of law. The same due process standards that govern state court assertion of jurisdiction over non-residents also apply to tribal courts. *Red Fox v. Hettich*, 494 N.W.2d 638, 645 (S.D.1993); *J.D.M.C.* at ¶ 44-52; *In re DeFender*, 435 N.W.2d 717, 720-21 (S.D.1989). Thus, a state or an Indian tribe may constitutionally project its power outside of its territory and exercise long-arm personal

jurisdiction only if the person who is the target of that jurisdiction has sufficient "minimum contacts" with the state or Indian tribe. *Internatl. Shoe Co.*

{¶ 96} Without the requisite minimum contacts the tribal court lacks personal jurisdiction over the non-resident parties in this case. Where a foreign tribunal attempts to exercise jurisdiction in the absence of minimum contacts, the foreign court order is invalid and not given full faith and credit. *Anilas, Inc. v. Kern*, 28 Ohio St.3d 165 (1986); *Litsinger Sign Co. v. Am. Sign Co.*, 11 Ohio St.2d 1 (1967), paragraph one of the syllabus. GRIC contends that C.J., Jr.'s status as an Indian child subjects him to the personal jurisdiction of the tribal court. The status exception to due process concerns allows for cases involving personal status of an individual, such as a divorce, to be adjudicated in a plaintiff's home forum even though a party to the action is outside the forum's jurisdiction and cannot be served within the forum. *Shaffer v. Heitner*, 433 U.S. 186, 201 (1977).

{¶ 97} However, the exception does not apply when, as here, the child, C.J., Jr. is not present in the forum. *J.D.M.C.* at ¶ 47 ("A fundamental part of the status exception is the child's presence in the forum."). Since C.J., Jr. has never set foot on the reservation, due process and minimum contacts cannot be circumvented by the status exception.

{¶ 98} GRIC has also argued that 25 U.S.C. 1911(a) of ICWA confers exclusive jurisdiction to the tribal court.

{¶ 99} As noted earlier, when an Indian child "resides or is domiciled within the reservation" or is a ward of the tribal court, the tribal court has exclusive jurisdiction over custody proceedings relating to that child. 25 U.S.C. 1911(a). Thus, a plain language reading of 25 U.S.C. 1911(a) mandates that jurisdiction over C.J., Jr.'s custody action rests exclusively with the tribal court if C.J., Jr.: (1) is a resident of the reservation, (2) is a domicile of the reservation, or (3) is a ward of the tribal court. 25 U.S.C. 1911(a).

{¶ 100} As discussed above, if a child does not reside or have domicile within the reservation, then the tribe does not have exclusive jurisdiction. *Taylor* at ¶ 39. Here, it is undisputed that C.J., Jr. does not reside or have domicile within the reservation.

{¶ 101} Second, GRIC tries to bootstrap exclusive jurisdiction over C.J., Jr. by virtue of the fact that they made him a ward of their court by means of the ex parte order. This argument betrays a fundamental misunderstanding of the second sentence of 25 U.S.C. 1911(a). If a child is *already* a ward of a tribe, then exclusive tribal jurisdiction is retained

even if the child is domiciled elsewhere later. *Comanche Indian Tribe v. Hovis*, 847 F.Supp. 871, 883-84 (W.D.Okla.1994), *rev'd on other grounds*, 53 F.3d 298 (10th Cir.1995).

{¶ 102} Here, the juvenile court appeared confused as to whether Ohio even had concurrent jurisdiction.

{¶ 103} "The Federal Court [actually the tribal court] has issued an order, far be it from me to issue an order contra. * * * I certainly don't want to be in a position that I am issuing an order that is contra to federal statute, so I am not at all convinced we have even concurrent jurisdiction." (Dec. 15, 2016 Trial Court Tr. at 21.)

{¶ 104} Full faith and credit also requires that the issuing court afford the parties due process. *Starr* at 55. The tribal court order was entered in an ex parte proceeding without notice to the parties. This deprived the parties of due process of law. Lack of notice is a recognized exception to full faith and credit. *Id.* at 58. The juvenile court erred in giving full faith and credit to the GRIC tribal court order for this additional reason.

## C. Transfer of Custody

{¶ 105} In addition to improperly transferring jurisdiction to the tribal court, the juvenile court also transferred legal custody of C.J., Jr. to Gila River Indian Community Tribal Social Services. It ordered C.J., Jr. to be placed in the physical custody of a great aunt and uncle, M.P. and T.P., whom C.J., Jr. has never met, and authorized them to sign for medical and educational needs deemed necessary. It ordered C.J., Jr.'s parents to appear in the tribal court for all hearings and adjudications, and it made C.J., Jr.'s parents financially responsible for C.J., Jr.

{¶ 106} The juvenile court transferred custody to strangers that C.J., Jr. has never met. While here in Ohio, C.J., Jr. is bonded to his foster parents and has maintained visitation with S.R. (while she was alive), and C.J., Sr. There is no indication in the record that a background check was conducted of M.P. and T.P., a great aunt and uncle who would take physical custody of C.J., Jr. There is some indication in the record that C.J., Sr. may not be allowed to travel to Arizona due to legal issues related to community control or probation issues, and that in all likelihood he lacks the financial resources to be financially responsible for C.J., Jr. In addition, C.J., Jr. has expressed a desire to remain with his foster parents and to be able to spend time with his biological parents. The juvenile court also

expressed concerns about C.J., Jr.'s special needs and the harm that uprooting him for the sake of uprooting or to prove a point could have on him.

{¶ 107} "[T]his child has been with a family for the past two years[.] This child has special needs and uprooting for the sake of uprooting or to prove a point is problematic." (Dec. 15, 2016 Tr. at 21).

{¶ 108} All this was done without any analysis of C.J., Jr.'s best interests or whether there was good cause to depart from ICWA's placement preferences as set forth in 25 U.S.C. 1915(b).

{¶ 109} Under 25 U.S.C. 1915(b) absent good cause to the contrary, an Indian child must be placed in this order: (1) member of the child's extended family, (2) foster home licensed, approved, or specified by the tribe, (3) Indian foster home licensed or approved by authorized non-Indian agency, and (4) group home approved by the tribe or operated by Indian organization which has a program suitable to meet the child's needs. Additionally, under 25 U.S.C. 1915(c), although not an absolute bar to the placement preferences, preference of the parent and/or child shall be considered.

{¶ 110} No one has appealed or disputed that GRIC should be allowed to intervene in this case. This court is cognizant that GRIC has a protectable interest in its Indian children, and that the protection of this tribal interest is at the core of the ICWA. 25 U.S.C. 1902; *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52 (1989), citing *In re Adoption of Halloway*, 732 P.2d 962, 969-70 (Utah 1986). But significant errors occurred in the juvenile court's transfer of jurisdiction and transfer of custody. The juvenile court should not have terminated the temporary custody of FCCS and ordered the transfer of C.J., Jr. to GRIC. The juvenile court must conduct an evidentiary hearing to determine whether good cause exists to deviate from ICWA's placement preferences, what the best interests of C.J., Jr. are, and whether those interests override the tribal interests of GRIC. *In re Appeal in Maricopa Cty. Juv. Action No. A-25525*, 667 P.2d 228, 234 (Ariz.App.1983) ("the child's best interest may override a tribal or family interest" under ICWA); *C.L. v. P.C.S.*, 17 P.3d 769, 773 (Alaska 2001) ("best interests of the child remain the paramount criterion" in determining whether to deviate from ICWA placement preferences).

### D. Dismissal of FCCS's Complaint in Case No. 15JU-232

{¶ 111} The juvenile court entry of December 22, 2016 stated that it was to be retroactive to December 15, 2016.  The order purported to declare the entire case in case No. 15JU-232 null and void, but then purported to transfer the jurisdiction of the null and void case to the tribal court.  The juvenile court then continued temporary custody of C.J., Jr. with FCCS, and gave full faith and credit to the ex parte tribal court order before case No. 15JU-232 was purportedly transferred to the tribal court.

{¶ 112} GRIC contends that the doctrine of res judicata precludes consideration of the juvenile court's decision granting transfer to the tribal court as no timely appeal was perfected from the December 22, 2016 judgment.

{¶ 113} In order for res judicata to apply, there must be a prior valid judgment on the merits.  *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus.  Here, as discussed above, the December 22, 2016 entry is not a valid transfer order pursuant to 25 U.S.C. 1911(b).

{¶ 114} The rationale for dismissing the case was the belief that GRIC was prejudiced by late notice of the case.  However, GRIC attempted to assert jurisdiction over C.J., Jr. and his parents on December 13, 2016, two days before the juvenile court dismissed the action, declared the case null and void, and transferred jurisdiction to the tribal court.  Even after purportedly relinquishing jurisdiction to the tribal court, the juvenile court never actually relinquished jurisdiction because the juvenile court proceeded to issue orders in case No. 16JU-13594.  The juvenile court stated on the record that the hearing on December 15, 2016 was conducted under both case numbers, and set the matter for a further hearing on February 2, 2017.

{¶ 115} The procedural anomalies in this case are so severe and so pervasive that the matter must be remanded to the juvenile court for further proceedings.  As discussed above, this is one case about one little boy, and the arguments concerning multiple cases are not well-taken.

## IV. CONCLUSION

{¶ 116} It is not for this court to decide where and with whom C.J., Jr. should live.  However, we have been asked to decide the legal question of who should make the custody determination concerning this child.  Based on the foregoing, that decision should be made by the Ohio court after a full evidentiary hearing taking into account the best interests of

C.J., Jr., any competing interests of the other parties to this litigation, and the full participation of GRIC. Whether the trauma that might result from removing C.J., Jr. from the only home he has known since he was two years old should outweigh the interest of GRIC in having him transported across the country and raised as part of the GRIC must be determined with all the wisdom, compassion, and experience of the juvenile court.

{¶ 117} Based on the foregoing, the motions to strike the briefs of the GAL are denied, the motion to substitute a proper person in place of the birth mother is granted, and the motions to dismiss the appeals are denied with the exception of the mother's appeal in case No. 17AP-162. C.J., Sr.'s motion to dismiss the mother, S.R.'s appeal in case No. 17AP-162 is granted.

{¶ 118} The GAL's assignment of error is sustained. The judgments of the juvenile court are reversed and remanded for further proceedings in accordance with this decision.

> *Motions to strike the briefs of the GAL are denied; motion to substitute a proper person in place of the birth mother is granted; motions to dismiss the appeals are denied with the exception of the mother's appeal in case No. 17AP-162; C.J., Sr.'s motion to dismiss the mother, S.R.'s appeal in case No. 17AP-162 is granted. Judgment reversed and cause remanded.*

BROWN, P.J and LUPER-SCHUSTER J.,
concur in part and concur in judgment.

BROWN, P.J., concurring in part and concurring in judgment.

{¶ 119} I neither agree with the findings in paragraphs 66 through 76 of the decision nor believe such analysis is necessary to resolve the appeal. As we eventually concluded in paragraph 77, the Supreme Court of Ohio has already found in *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558 that the delayed appeal provisions in App.R. 5(A) do not extend to cases involving the termination of parental rights. Also, in sustaining the guardian ad litem's assignment of error and remanding the matter, we have effectively rendered moot the issue of whether S.R.'s appeal was timely. Thus, the discussion regarding due process and ineffective assistance of counsel is unnecessary.

{¶ 120} Furthermore, consistent with the concurrence by Judge Luper Schuster I do not believe the trial court must address good cause when there is a valid objection by either parent pursuant to 25 U.S.C. 1911(b). Here, only if S.R.'s objection would no longer be valid due to the dismissal of the case in which the objection was made must the trial court address good cause.

{¶ 121} In all other respects, I concur and would remand the matter for further proceedings in accordance with 25 U.S.C. 1911(b).

_____

LUPER SCHUSTER, J., concurring in part and concurring in judgment.

{¶ 122} While I concur in judgment, I write separately to clarify my reasoning for why the trial court erred and this matter must be remanded for further proceedings.

{¶ 123}  This matter comes to this court after taking a fairly complicated procedural path.  C.J., Jr., the son of C.J., Sr. and S.R., has lived in Ohio at all times since his birth in July 2012, and no party disputes his status as an Indian child under applicable law.  In January 2015, Franklin County Children Services ("FCCS") filed a complaint alleging C.J., Jr. was a neglected, abused, and dependent child.  This complaint initiated case No. 15JU-232.  In April 2015, the trial court made C.J., Jr. a ward of the court and committed him to the temporary custody of FCCS.  In July 2016, the guardian ad litem ("GAL") moved for the court to award legal custody to N.B. and S.B., with whom C.J., Jr. had resided since January 2015.  Also in July 2016, Gila River Indian Community ("GRIC") intervened in the matter. In September 2016, and pursuant to 25 U.S.C. 1911(b), GRIC moved for a transfer of jurisdiction to GRIC's Children's Court in Sacaton, Arizona ("tribal court").  GRIC also requested that the court grant temporary custody to GRIC's social services agency.  Soon thereafter, S.R., C.J., Jr.'s mother, filed an objection to GRIC's requested transfer of jurisdiction.

{¶ 124} On November 2, 2016, the magistrate held a hearing on the matter focusing on GRIC's request for a transfer of jurisdiction and placement of the child with the tribe. The hearing was not completed on that date, and the magistrate continued the matter.  At a brief hearing on November 14, 2016, the magistrate stated that she had an off-the-record conversation with the parties during which she informed them of how the court was leaning

regarding the requested transfer of jurisdiction and other issues involved in the case. She then continued the matter until December 15, 2016. The next day, the GAL filed a new complaint in the trial court, which initiated case No. 16JU-13594, alleging C.J., Jr. was a neglected, abused, and dependent child.

{¶ 125} On December 13, 2016, GRIC filed a Child in Need of Care Petition in the tribal court. The tribal court granted the petition in case No. JC-2016-0434, made C.J., Jr. a ward of the court and placed him under the care, custody, and control of GRIC's social services agency. Two days later, on December 15, 2016, the trial court magistrate held a hearing regarding both case Nos. 15JU-232 and 16JU-13594. The initial focus of the hearing was on the disposition of case No. 15JU-232. The magistrate noted on the record her finding that proper notice was not given to GRIC pursuant to 25 U.S.C. 1912(a), and that she was dismissing the case on that basis. The focus of the hearing then turned to the court's jurisdiction in case No. 16JU-13594. S.R.'s counsel indicated that she objected to any transfer of the proceedings to the tribal court and "d[id] not want the Tribe to have jurisdiction over the child." (17AP-191, Dec. 15, 2016 Tr. at 17.) The magistrate indicated that temporary custody would be awarded to GRIC based in part on the fact that the tribal court had already exercised jurisdiction regarding C.J., Jr.'s custody. The magistrate also stated that "there is no reason presented to this Court, at this time, to deviate from the BIA guidelines, which do require that this child be placed in an Indian home or in - - with an Indian relative." (17AP-191, Dec. 15, 2016 Tr. at 28.) This statement appears to be a reference to the placement preferences for an Indian child set forth in 25 U.S.C. 1915.[6] On the day of the hearing, the magistrate, in case No. 16JU-13594, signed an order stating that temporary custody of C.J., Jr. was awarded to "Hela [sic] Indian River Community." (16AP-891, Dec. 15, 2016 Mag.'s Order.)

{¶ 126} Later in the day on December 15, 2016, the trial court heard the matter. At the hearing before the trial court, GRIC argued its court had exclusive jurisdiction over the custody of the child pursuant to 25 U.S.C. 1911(a). S.R.'s counsel challenged the legitimacy

---

[6] 25 U.S.C. 1915(b) provides that, "in the absence of good cause to the contrary," the preferred placement of an Indian child in "[f]oster care or preadoptive placements" is with a member of the child's extended family; a foster home approved by the Indian child's tribe; an Indian foster home; or an institution for children approved by an Indian tribe or operated by an Indian organization.

of the tribal court proceedings purporting to make C.J., Jr. a ward of that court and again stated her client's position that the trial court not transfer jurisdiction to the tribal court. After the parties argued the jurisdictional and custody issues, the trial court indicated its intent not to issue an order in contravention of the tribal court's order reflecting that court's exercise of jurisdiction over the child's custody. However, the trial court, deeming it important to keep the child with his foster parents for Christmas, asked GRIC if it would, as a matter of courtesy, permit the child to remain in Ohio for two weeks. In effect, the trial court indicated its view that the tribal court rightfully had exercised exclusive jurisdiction over the proceedings, but that, as a practical necessity, it needed to award temporary custody to FCCS until December 28, 2016.[7] To that end, on December 16, 2016, the trial court filed an entry granting FCCS temporary custody of the child until December 28, 2016, "at which time this order shall terminate and custody shall be pursuant to JC-2016-0434 State of Arizona, GILA Tribal Social Services."

{¶ 127} On December 22, 2016, the trial court, in case No. 15JU-232, adopted the magistrate's decision dismissing that case based on the violation of the notice requirement in 25 U.S.C. 1912(a). The adopted magistrate's decision in case No. 15JU-232 also granted GRIC's request for a change of jurisdiction, terminated the court's wardship of C.J., Jr., and terminated the temporary custody of the child to FCCS. Although the magistrate's decision, and the trial court entry adopting that decision, were filed December 22, 2015, the decision states that all orders were retroactively effective December 15, 2016. While this entry suggests that the trial court's jurisdiction over C.J., Jr.'s custody proceedings ceased on December 15, 2016, the trial court continued to exercise jurisdiction over those proceedings beyond that date as reflected in the trial court's December 16 and 28, 2016 orders in case No. 16JU-13594. As the majority notes, the trial court treated case Nos. 15JU-232 and 16JU-13594 as involving one central substantive matter—the care and custody of C.J., Jr. —even though the cases originated separately.

{¶ 128} On December 28, 2016, the trial court, in case No. 16JU-13594, extended its order of temporary custody to FCCS until the next day, when its order "shall terminate and

---

[7] Presumably because the trial court determined it was required to cede jurisdiction over the child's custody proceedings to the tribal court, it made no finding regarding the existence of good cause to deviate from the placement preferences set forth in 25 U.S.C. 1915.

custody shall be pursuant to JC-2016-0434 State of Arizona."  (16AP-891, Dec. 28, 2016 Entry.)  Also on December 28, 2016, the GAL filed a motion in this court for an emergency stay in case No. 16JU-13594.  The next day, this court granted a stay of the trial court's December 16 and 28, 2016 orders.

{¶ 129} The GAL filed a timely notice of appeal from the trial court's December 2016 entries in case No. 16JU-13594.  In March 2017, S.R. filed a notice of appeal from the trial court's December 22, 2016 entry in case No. 15JU-232.  Soon after S.R.'s notice of appeal was filed, her counsel informed this court that S.R. had died.  Also in March 2017, the GAL filed an additional notice of appeal from a March 2017 trial court entry in case No. 15JU-232 purporting to dismiss the January 2015 complaint because that case was "refiled under 16JU-13594."  (17AP-191, Mar. 9, 2017 Mag.'s Decision & Entry.)  The trial court subsequently, in a May 24, 2017 entry denying a Civ.R. 60(B) motion for relief from judgment, characterized the March 9, 2017 entry as superfluous because its December 22, 2016 entry terminated case No. 15JU-232.  In that same entry, the trial court described the underlying facts and issue in the two juvenile cases involving C.J., Jr. to be "inextricably linked." (17AP-191, May 24, 2017 Decision & Entry at 9.)

{¶ 130} On appeal, the GAL generally assigns as error the trial court's transfer of jurisdiction and custody of the child to the tribal court.  This assigned error places before us the primary issue of whether the trial court properly ceded its jurisdiction to the tribal court as to C.J., Jr.'s custody proceedings.

{¶ 131} The reason the trial court ceded its jurisdiction to the tribal court is not entirely clear.  Despite previously moving for a transfer of jurisdiction pursuant to 25 U.S.C. 1911(b), GRIC argued, at the December 15, 2016 hearing before the trial court, that its court has exclusive jurisdiction under 25 U.S.C. 1911(a) because C.J., Jr. is a ward of the tribal court.  It appears that the trial court agreed with this argument and ceded its jurisdiction on that basis, and not based on a finding that a transfer was required under section 1911(b). However, regardless of whether the trial court found it lacked any jurisdiction under section 1911(a), or that it was required to transfer the proceedings to the tribal court under section 1911(b), the trial court's decision to cede jurisdiction to the tribal court was in error.

{¶ 132} The tribal court does not have exclusive jurisdiction over C.J., Jr.'s custody proceedings.   Section 1911(a) establishes exclusive jurisdiction in a tribal court for

proceedings concerning an Indian child "who resides or is domiciled within the reservation of such tribe." Because C.J., Jr. does not reside and is not domiciled within GRIC's reservation, this provision does not apply. Section 1911(a) also provides that "[w]here an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child." For this provision to apply, the child must have been made a ward of the tribal court before the initiation of the action in state court. *In re J.D.M.C.*, 2007 SD 97, 739 N.W.2d 796. Here, however, the tribal court purported to make C.J., Jr. a ward of that court well-after the custody proceedings in the trial court were initiated. Additionally, for an Indian child who was "never domiciled on the reservation, and was not residing on the reservation at the time the tribal court exercised jurisdiction and entered the wardship order," the "tribal court [is] not * * * empowered to effectuate the status of a child as a 'ward of the court' relying upon § 1911(a)." *In re Adoption of T.R.M.*, 525 N.E.2d 298, 306 (Ind.1988); *see In re J.D.M.C.* at ¶ 23 (citing Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, B.4(b) (1979) (not codified), for the principle that "a child can only be a ward of the tribal court if [he or she] has 'previously resided or been domiciled on the reservation.' "). Not only was C.J., Jr. domiciled within Ohio when the wardship order was entered, he has never been a resident or domiciled within the reservation. For these reasons, jurisdiction over C.J., Jr.'s custody proceedings was not vested exclusively with the tribal court. The trial court erred to the extent it concluded to the contrary.

{¶ 133} Moreover, to the extent the trial court transferred the custody proceedings to the tribal court pursuant to 25 U.S.C. 1911(b), the trial court erred because the mother objected to the transfer of the proceedings. Under section 1911(b), the trial court was required to transfer the proceedings to the tribal court, "in the absence of good cause to the contrary," and "absent objection by either parent." As the majority notes, a parental objection has been considered an "absolute veto" to the transfer of jurisdiction. *See In re Appeal in Maricopa Cty., Juvenile Action No. JD-6982*, 186 Ariz. 354, 922 P.2d 319 (Ariz.App.1996). Here, the mother, through her attorney, repeatedly objected in the trial court to the requested transfer of the custody proceedings. Even though the mother has died during the pendency of this appeal, her death does not operate as a retroactive withdrawal of her timely objection to the transfer. Thus, section 1911(b) did not authorize

the transfer.  And because the mother objected to the transfer of the proceeding, it is unnecessary to analyze whether there was good cause not to transfer the custody proceedings.  *See id.* (Section 1911(b) transfer is required unless either the court finds good cause not to transfer or either parent objects to the transfer.).

{¶ 134} In sum, despite there being multiple cases initiated in the trial court regarding C.J. Jr.'s custody, and multiple appeals filed concerning those cases, the matter before us squarely presents the issue of whether the trial court erred in ceding jurisdiction over C.J. Jr.'s custody proceedings to the tribal court.  Because the trial court erred in ceding its jurisdiction to the tribal court, I agree with the majority's decision to sustain the GAL's assignment of error.  Additionally, in my view, the issue of whether S.R.'s appeal is timely is rendered moot because, based on the disposition of the GAL's assignment of error, this matter must be remanded to the trial court for further proceedings in accordance with law, with instructions to determine as appropriate and necessary whether good cause exists to deviate from the placement preferences established under the Indian Child Welfare Act.

{¶ 135} For these reasons, I concur in part and concur in judgment.

_____